IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 08, 2015 Session

## ALEX FRIEDMANN, ET AL. v. MARSHALL COUNTY, TN, ET AL.

**Appeal from the Chancery Court for Marshall County**
**No. 17017      J. B. Cox, Chancellor**

_____

**No. M2014-01413-COA-R3-CV – Filed June 24, 2015**
_____

The trial court ordered the Marshall County Sheriff's Office to produce the public records requested by Appellant but declined to award Appellant any attorneys' fees. On appeal, we conclude that the trial court abused its discretion in declining to award attorneys' fees. Accordingly, we reverse and remand the case to the trial court for the entry of an order awarding Appellant reasonable attorneys' fees and costs pursuant to Tennessee Code Annotated § 10-7-505(g).

**Tenn. R. App. P. 3 Appeal as of Right: Judgment of the Chancery Court Reversed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which KENNY ARMSTRONG, J., joined. BRANDON O. GIBSON, J., filed a separate concurring opinion.

Robert Dalton and Michael Auffinger, Lewisburg, Tennessee, for the appellant Alex Friedmann.

William M. Haywood and David L. Thibodeaux, Lewisburg, Tennessee, for the appellees, Marshall County Tennessee, Joe Boyd Liggett, County Mayor, acting by and through, Marshall County Sheriff's Department, Norman Dalton, Sheriff.

**OPINION**

### I.      Background and Procedural History

This appeal arises out of a public records dispute between Appellant Alex Friedmann ("Mr. Friedmann") and the Marshall County Sheriff's Office ("Sheriff's Office"). Mr. Friedmann is the managing editor of *Prison Legal News*, a publication that

reports on news and litigation related to the criminal justice system. On February 3, 2014, Mr. Friedmann wrote a letter to Sheriff Norman Dalton ("Sheriff Dalton") requesting a number of public records related to the Marshall County Jail Complex. Specifically, the letter requested disclosure of several written jail policies and contracts, including policies related to prisoners' medical care. Mr. Friedmann's letter stated that his records request was made pursuant to the authority in the Tennessee Public Records Act ("the TPRA" or "the Act"), and he asked that the requested records be produced in an electronic format "if they [were] available in that format." There is no dispute among the parties that the requested records are public records to which Tennessee citizens have a right of access.

Following Mr. Friedmann's initial records request, the parties engaged in a series of contested back-and-forth communications. A response to Mr. Friedmann's February 3 request was made in writing on February 10, 2014, by Terry Wright ("Ms. Wright"), the Assistant Administrator at the Marshall County Jail. Ms. Wright's letter informed Mr. Friedmann that he could come to the Jail and make his records request in person. Her letter included information concerning the times when the Sheriff's Office would be available to assist Mr. Friedmann.[1] On February 19, 2014, Mr. Friedmann contacted Ms. Wright by email regarding her February 10 letter. He clarified that it was his intent to receive the requested records by mail or email, as opposed to making his request in person. His email stated that he would pay for any costs associated with obtaining copies of the records. Ms. Wright responded on February 21, 2014, and stated that Sheriff Dalton insisted that Mr. Friedmann make his records request in person. On the same day, Mr. Friedmann responded to Ms. Wright's email and informed her that an "in-person request" was not required under Tennessee law. To support his position, he provided Ms. Wright a link to a website maintained by the Tennessee Comptroller's Office, wherein the Office of Open Records Counsel ("OORC") answered frequently asked questions pertaining to public records requests. Mr. Friedmann noted that the OORC had already offered published guidance on the matter. In particular, he informed Ms. Wright that the position of the OORC, as set out in question and answer format on its website, specifically stated that citizens are not required to request records in person. Mr. Friedmann concluded his email by renewing his original records request.

On February 27, 2014, Ms. Wright responded to Mr. Friedmann's February 21 email. She stated that she had discussed his previous emails with Sheriff Dalton and informed Mr. Friedmann that she was forwarding a form that she claimed "must be filled out and signed in person to obtain records." She advised that any legal questions could be addressed to County Attorney Bill Haywood ("Mr. Haywood"). Mr. Friedmann responded the same day and told Ms. Wright she "may inform the sheriff he is incorrect." Reasserting his position that the law does not require requestors to personally appear, Mr.

---

[1] Sheriff Dalton's hearing testimony indicated that he considered the February 10, 2014, response to be a denial of Mr. Friedmann's records request. He testified that the basis of this initial denial was his belief that the law required the records request to be made in person.

2

Friedmann stated he would have his attorney contact Mr. Haywood "to ensure that the sheriff follows the law."

On March 12, 2014, Tennessee Open Records Counsel Elisha Hodge ("Ms. Hodge") emailed Mr. Haywood concerning Mr. Friedmann's public records request. Ms. Hodge's email informed Mr. Haywood that the law did not require citizens to appear in person in order to make a public records request, and she cited a number of Tennessee cases in support of this position. Two days later, Mr. Haywood was contacted again, this time by Robert Jack ("Mr. Jack"), counsel for *Prison Legal News*. Mr. Jack emphasized that Mr. Friedmann was not required to appear in person to make a public records request, and he attached the correspondence Ms. Hodges previously sent to Mr. Haywood. Mr. Jack reminded Mr. Haywood that the County could potentially be liable for attorneys' fees for refusing to provide Mr. Friedmann with the requested records. On March 19, 2014, Mr. Haywood wrote a letter responding to Mr. Jack and suggested that Mr. Jack had misinterpreted the law. Mr. Haywood contended that the Sheriff's Office was "only obligated to make [the records] available for public [in person] inspection."

On March 24, 2014, Mr. Friedmann renewed his records request. Included with his request was a copy of his driver's license and a completed records request form that had been created by the Sheriff's Office. Sheriff Dalton did not respond to the request within the timeframe provided by Tennessee Code Annotated § 10-7-503. On April 9, 2014, Mr. Friedmann emailed Ms. Wright stating that the Sheriff's Office was beyond the statutory time period required for a response to his request. On April 11, 2014, Mr. Friedmann emailed Ms. Wright again and inquired into the Sheriff's Office's lack of response to his March 24 records request. Having still received no response, Mr. Friedmann emailed Ms. Wright once more on April 17, 2014. In this latest email, Mr. Friedmann reiterated that the OORC had issued an opinion as to whether citizens are required to submit public records requests in person. This opinion, which Mr. Friedmann attached to his email, stated, in part, as follows:

> [I]t is the opinion of this office that, to the extent that a requestor is able to sufficiently identify the records for which copies are being requested and has paid all necessary copying, labor and delivery fees associated with producing the requested copies, the requestor is not required to appear in person either to submit a public records request or [to] retrieve the requested records.

Mr. Friedmann concluded the email by indicating that he would take legal action if he did not receive a response by April 30. On April 22, 2014, Ms. Wright responded and advised Mr. Friedmann to contact Mr. Haywood with any further questions.[2]

---

[2] The trial court's order suggests that there was no written response to Mr. Friedmann's April emails or his March 24 renewed request. The evidence preponderates against this finding. Having reviewed the statement of evidence which was approved by the trial court, it is clear that Ms. Wright emailed Mr.

On May 16, 2014, Mr. Friedmann filed a Petition for Access and to Show Cause pursuant to the Tennessee Public Records Act. In addition to seeking a judgment that he was entitled to access to the public records he had requested, Mr. Friedmann requested that he be awarded reasonable costs and attorneys' fees as a result of the Sheriff's Office's "willful" denial of access. The trial court held a hearing on the matter on June 4, 2014. At the hearing, the trial court heard testimony from both Sheriff Dalton and Mr. Friedmann. It also entertained arguments from Mr. Friedmann's counsel and Mr. Haywood.

In his opening statement on behalf of the County, Mr. Haywood stated, for the first time since this process commenced, that Mr. Friedmann was denied access to the requested records due to Mr. Friedmann's failure to prove that he was a resident of Tennessee. When Sheriff Dalton testified, he described how he had personally traveled to the address listed on Mr. Friedmann's driver's license and noted that he had discovered it corresponded to a post office box.[3] According to his testimony, his specific concerns about Mr. Friedmann's residency had not been uncovered until after the Petition for Access and to Show Cause was filed. He further acknowledged that he had not contacted Mr. Friedmann about the residency issue. Mr. Friedmann's testimony confirmed this. Mr. Friedmann testified that he had not been aware of any residency concerns until immediately prior to the June 4, 2014, hearing. He further testified that the address on his driver's license was his mailing address, and he provided an explanation as to why he listed that address on his license, as opposed to his residential address. During closing arguments, Mr. Haywood stated that the Sheriff's Office's current basis for denial pertained to questions regarding Mr. Friedmann's residency. However, Mr. Friedmann's counsel pointed out that none of the Sheriff's Office's stated denials had anything to do with Mr. Friedmann's residency. He argued that such a reason could not now be used as a post-hoc rationalization.

On June 16, 2014, the trial court entered a "Memorandum Opinion and Order" based on the proof heard at the June 4 hearing. In explaining its ruling, the trial court outlined the history of correspondence that existed among the parties, their counsel, and the OORC. With respect to the Sheriff's Office's responses to Mr. Friedmann's initial request, namely the responses sent by Ms. Wright on February 10, February 21, and February 27, the trial court held, in spite of Sheriff Dalton's own testimony at the hearing

---

Friedmann on April 22, 2014, and suggested that he direct any further questions to Mr. Haywood. Inasmuch as this April 22 response failed to satisfy any of the descriptions in Tennessee Code Annotated § 10-7-503(a)(2)(B), it constituted a denial within the meaning of the Tennessee Public Records Act. Tenn. Code Ann. § 10-7-503(a)(3) (2012).

[3] We note that Sheriff Dalton also contacted the Department of Safety and Homeland Security as part of his investigation of Mr. Friedmann's residence. Although it is somewhat unclear what specific relevance he placed on the matter, Sheriff Dalton's testimony also reveals he had some concerns about Mr. Friedmann's prior criminal history. As recounted by the Statement of Evidence, he testified as to his decision to refer Mr. Friedmann to Mr. Haywood: "Second, he's an ex-convict. I'm not going to turn our records over to just anyone."

4

to the contrary, that the responses did not constitute a denial of the records *per se*. Rather, the trial court concluded that the responses merely imposed a condition that Mr. Friedmann come to the Jail in person to make his request. The trial court did, however, find that the Sheriff's Office denied Mr. Friedmann's renewed request made by way of his March 24 letter. As the trial court explained:

> It is the renewed requests that cause the Court the most concern. The renewed requests were not acted on by the Marshall County Sheriff's Department consistent with the statute. No communication occurred after March when the renewed requests were made. Silence prevailed throughout the month of April. This failure to respond is tantamount to a denial of the records. A response was required by the statute within seven (7) days and no response occurred. As the statute says, this is tantamount to a denial without a stated reason.

With respect to the question of Mr. Friedmann's citizenship, the trial court noted that Mr. Friedmann testified that he was a citizen of Tennessee. It further noted that no other proof had been introduced on the issue. Moreover, based on its determination that there had been a denial of what were undisputedly public records, the trial court concluded that Sheriff Dalton and the Sheriff's Office should turn over the requested records to Mr. Friedmann. Because the Sheriff's Office had not provided a good faith estimate of the anticipated costs of obtaining the records, the trial court ordered that the records be provided at no cost to Mr. Friedmann. Nevertheless, it did not find an award of attorneys' fees to be appropriate. The trial court stated:

> Sheriff Dalton's reliance upon his counsel's advice and his willingness to produce the records upon personal appearance show the Court that he was not willfully denying Mr. Friedmann his access to the records. Sheriff Dalton was merely acting on advice of counsel and later attempting to be appropriately careful to determine residency and status of the requesting party. These actions should not give rise to an award of attorney fees in this instance.

Following the entry of the trial court's order, Mr. Friedmann timely appealed to this Court.[4]

## II. Issues Presented

---

[4] By granting Mr. Friedmann access to the requested records, the trial court implicitly affirmed that Mr. Friedmann was—as he had testified—a Tennessee citizen. The trial court noted that there was no other proof on Mr. Friedmann's citizenship other than Mr. Friedmann's own testimony, and we observe that the Appellees have not presented any issues for review that would contest Mr. Friedmann's right to the requested records. Additionally, we observe that Appellees have not challenged the trial court's ruling that they are to provide the requested records to Mr. Friedmann at no cost.

On appeal, Mr. Friedmann raises several issues for our review, which we condense and restate as follows:

1. Whether the trial court erred in holding that the Sheriff's Office did not initially deny or refuse to disclose public records as contemplated by the Tennessee Public Records Act.

2. Whether the trial court erred in holding that the County's actions were not "willful" as contemplated by the Tennessee Public Records Act.

3. Whether the trial court erred in failing to award him reasonable costs and attorneys' fees pursuant to the Tennessee Public Records Act.

## III.    Standard of Review

In reviewing any findings of fact by the trial court, our review is *de novo* "upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). We review a trial court's conclusions on questions of law *de novo*, but no presumption of correctness attaches to the trial court's legal conclusions. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). Because statutory construction is a question of law, it "is reviewable on a de novo basis without any presumption of correctness." *In re Estate of Tanner*, 295 S.W.3d 610, 613 (Tenn. 2009) (citations omitted). When construing a statute, our goal "is to give full effect to the General Assembly's purpose, stopping just short of exceeding its intended scope." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 526 (Tenn. 2010) (citations omitted). "The text of the statute is of primary importance, and the words must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012) (citations omitted). If the language is clear and unambiguous, we should look no further to ascertain its meaning. *Id.* (citations omitted). "When necessary to resolve a statutory ambiguity or conflict, courts may consider matters beyond the statutory text, including public policy, historical facts relevant to the enactment of the statute, the background and purpose of the statute, and the entire statutory scheme." *Id.* (citation omitted).

## IV.    Discussion

At issue in this case is the application of the Tennessee Public Records Act. Codified at Tennessee Code Annotated § 10-7-101 *et seq.,* the TPRA "provides citizens of Tennessee with broad access to records of Tennessee governmental agencies." *Patterson v. Convention Ctr. Auth.*, 421 S.W.3d 597, 605 (Tenn. Ct. App. 2013) (citation omitted), *perm. app. denied* (Tenn. Aug. 18, 2013). The purpose of the TPRA is "to promote public oversight of governmental activities[,]" *Gautreaux v. Internal Med. Educ.*

*Found., Inc.*, 336 S.W.3d 526, 529 (Tenn. 2011) (citation omitted), and it requires the disclosure of public records not specifically exempted from disclosure. *Patterson*, 421 S.W.3d at 606 (citation omitted). Pursuant to the Act, "public records" or "state record or records" are defined as follows:

> all documents, papers, letters, maps, books, photographs, microfilms, electronic data processing files and output, films, sound recordings, or other material, regardless of physical form or characteristics made or received pursuant to law or ordinance or in connection with the transaction of official business by any governmental agency[.]

Tenn. Code Ann. § 10-7-301(6) (2012 and Supp. 2014). Recognizing this broad definition of public records, the Tennessee Supreme Court has characterized the TPRA as "'an all-encompassing legislative attempt to cover all printed matter created or received by government in its official capacity.'" *Patterson*, 421 S.W.3d at 606 (quoting *Griffin v. City of Knoxville*, 821 S.W.2d 921, 923 (Tenn. 1991)). There is a "presumption of openness" under the Act, *id.*, and disclosure can be required "even when there are significant countervailing considerations." *Gautreaux*, 336 S.W.3d at 529 (citation omitted). That the TPRA "establishes a broad right of public access to governmental records[,]" *Little v. City of Chattanooga*, No. E2011-027-24-COA-R3-CV, 2012 WL 4358174, at *13 (Tenn. Ct. App. Sept. 25, 2012), is clear. In relevant part, Tennessee Code Annotated § 10-7-503 provides as follows:

> All state, county and municipal records shall, at all times during business hours, which for public hospitals shall be during the business hours of their administrative offices, be open for personal inspection by any citizen of this state, and those in charge of the records shall not refuse such right of inspection to any citizen, unless otherwise provided by state law.

Tenn. Code Ann. § 10-7-503(a)(2)(A) (2012). When a records request is made, records custodians are directed to act in accordance with Tennessee Code Annotated § 10-7-503(a)(2)(B). That provision provides:

> The custodian of a public record or the custodian's designee shall promptly make available for inspection any public record not specifically exempt from disclosure. In the event it is not practicable for the record to be promptly available for inspection, the custodian shall, within seven (7) business days:
>
> (i) Make the information available to the requestor;
> (ii) Deny the request in writing or by completing a records request response form developed by the office of open

7

> records counsel.  The response shall include the basis for the denial; or
>
> (iii)    Furnish the requestor a completed records request response form developed by the office of open records counsel stating the time reasonably necessary to produce the record or information.

Tenn. Code Ann. § 10-7-503(a)(2)(B) (2012).  Failure to respond to the records request as described above "shall constitute a denial[.]"  Tenn. Code Ann. § 10-7-503(a)(3) (2012).  When a citizen's records request has been denied "in whole or in part[,]" the citizen is entitled to "obtain judicial review of the actions taken to deny the access." Tenn. Code Ann. § 10-7-505(a) (2012).  At the hearing of a citizen's petition for judicial review, "[t]he burden of proof for justification of nondisclosure of records sought shall be upon the official and/or designee of the official of those records and the justification for the nondisclosure must be shown by a preponderance of the evidence."  Tenn. Code Ann. § 10-7-505(c) (2012).  When ruling on a citizen's petition, courts must construe the Act broadly "so as to give the fullest possible public access to public records."  Tenn. Code Ann. § 10-7-505(d) (2012).

Mr. Friedmann's first issue on appeal challenges the trial court's conclusion that the Sheriff's Office did not "deny" or "refuse to disclose" public records until after Mr. Friedmann made a renewed records request on March 24, 2014.  As previously noted, the trial court did not consider the Sheriff's Office's initial responses to Mr. Friedmann's records request to constitute denials within the meaning of the TPRA.  From the trial court's perspective, the Sheriff's Office's initial responses were akin to an invitation for personal inspection.  For example, as the trial court explained Ms. Wright's February 21, 2014, response, "This email does not deny Mr. Friedman[n] the records, but imposes a condition that he come to the jail for them."

Having reviewed the issue and the facts upon which the trial court relied, we agree with Mr. Friedmann that the trial court's analysis on this issue was in error.  In construing the TPRA, we have previously held that a citizen does not need to make a physical appearance in order to make a records request.  *Waller v. Bryan*, 16 S.W.3d 770, 774 (Tenn. Ct. App. 1999) ("If a citizen can sufficiently identify the documents which he wishes to obtain copies of so as to enable the custodian of the records to know which documents are to be copied, the citizen's personal presence before the record custodian is not required."); *Jones v. Crumley*, No. E2003-01598-COA-R3-CV, 2004 WL 2086330, at *1-2 (Tenn. Ct. App. Sept. 20, 2004) (recognizing *Waller* as controlling authority); *see also* Tenn. Op. Atty Gen. No. 06-069, 2006 WL 1197463, at *2 (April 12, 2006) ("Tennessee courts have held that a citizen's personal presence is not required in order to request copies of a public record, if such citizen can sufficiently identify the documents that he or she wishes to obtain copies of, so as to enable the records custodian to know which documents are to be copied.").  As we explained in *Waller*, "[i]f the citizen

8

requesting inspection and copying of the documents can sufficiently identify those documents so that [the records custodians] know which documents to copy, a requirement that the citizen must appear in person to request a copy of those documents would place form over substance and not be consistent with the clear intent of the Legislature." *Waller*, 16 S.W.3d at 773. Although the trial court did not consider the Sheriff's Office's initial responses to be denials of the records *per se* because such responses merely imposed a condition of personal appearance, the imposition of such a condition was not permissible. As is evident from the authorities just cited, a citizen does not need to make a personal appearance in order to make a records request.[5] Moreover, the responses did not meet any of the criteria of Tennessee Code Annotated § 10-7-503(a)(2)(B). Under that statute, records custodians faced with a records request shall (i) "[m]ake the information available to the requestor"; (ii) "[d]eny the request in writing or by completing a records request response form developed by the office of open records counsel"; or (iii) "[f]urnish the requestor a completed records request response form developed by the office of open records counsel stating the time reasonably necessary to produce the record or information." Tenn. Code Ann. § 10-7-503(a)(2)(B) (2012). Here, the Sheriff's Office's initial responses failed to satisfy any of these requirements. As such, they constituted a denial within the meaning of the statute.[6] Tenn. Code Ann. § 10-7-503(a)(3) (2012) ("Failure to respond to the request as described in subdivision (a)(2) shall constitute a denial and the person making the request shall have the right to bring an action as provided in § 10-7-505."). Although the initial responses left Mr. Friedmann the option of acquiring the requested records in person, the law entitles him to obtain copies of the records without making a personal appearance.

---

[5] In their brief, Appellees attempt to give *Waller* a limited reading. They note that *Waller*—and the cases following it—involved records requests by inmates. Under Appellees' interpretation, such cases obviate a personal inspection requirement only when the records requestor is incarcerated or otherwise unable to appear in person. Our reading of *Waller* does not yield such a narrow interpretation, and we decline to give it the narrow application argued for by Appellees. The rule from Waller is clear: "If a citizen can sufficiently identify the documents which he wishes to obtain copies of so as to enable the custodian of the records to know which documents are to be copied, the citizen's personal presence . . . is not required." *Waller*, 16 S.W.3d at 774. This language does not suggest that a personal appearance requirement is only removed for those who are incarcerated or otherwise unable to appear. In this vein, we view *Waller*'s references to incarceration and inability to appear as merely illustrative of why a personal appearance cannot be considered mandatory under the Act. To adopt the view argued by Appellees would not only unduly limit the analysis in *Waller*, it would also create unnecessary questions regarding rights of access. That is, if inability to appear is the touchstone concern as Appellees have argued, how is that inability to be measured? Can it be measured in terms of physical proximity to the records custodian's office? What degree of physical disability is required? Under what circumstances would a records custodian have discretion to ignore pleas of inability to appear? Because we affirm *Waller*'s general pronouncement that a personal appearance is not mandatory when one can sufficiently identify the requested records, we find it unnecessary to answer any such questions.

[6] Moreover, as Mr. Friedmann has pointed out in his appellate brief, Sheriff Dalton's own testimony at trial was that he considered the Sheriff's Office's initial response to Mr. Friedmann's records request to be a denial.

We next address Mr. Friedmann's issues relating to his request for attorneys' fees. In addition to reviewing whether the trial court erred in holding that the Appellees' actions were not willful, we consider whether the trial court erred in failing to award Mr. Friedmann reasonable costs and attorneys' fees pursuant to the TPRA. Under the TPRA, attorneys' fees may be recovered pursuant to the terms outlined in Tennessee Code Annotated § 10-7-505(g):

> If the court finds that the governmental entity, or agent thereof, refusing to disclose a record, knew that such record was public and willfully refused to disclose it, such court may, in its discretion, assess all reasonable costs involved in obtaining the record, including reasonable attorneys' fees, against the nondisclosing governmental entity. In determining whether the action was willful, **the court may consider any guidance provided to the records custodian by the office of open records counsel as created in title 8, chapter 4.**

Tenn. Code Ann. § 10-7-505(g) (2012) (emphasis added). By its terms, the attorneys' fee provision is "a limited award provision." *Memphis Publ'g Co. v. City of Memphis*, 871 S.W.2d 681, 689 (Tenn. 1994) (citing *Abernathy v. Whitley*, 838 S.W.2d 211 (Tenn. Ct. App. 1992)). As the award of attorneys' fees is within the discretion of the trial court, we review it for an abuse of discretion. *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 358 S.W.3d 213, 226 (Tenn. Ct. App. 2010) (citing *Henderson v. City of Chattanooga*, 133 S.W.3d 192, 215-16 (Tenn. Ct. App. 2003)). A trial court abuses its discretion only when it applies an incorrect legal standard, or reaches a decision which is against logic or reasoning that causes an injustice to the party complaining. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (citing *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)).

The standard by which courts are to measure "willfulness" under the statute has been the subject of varying judicial statements. *The Tennessean v. City of Lebanon*, No. M2002-02078-COA-R3-CV, 2004 WL 290705, at *9 (Tenn. Ct. App. Feb. 13, 2004); *see Little*, 2012 WL 4358174, at *14 n.7. As this Court observed in *The Tennessean v. City of Lebanon*:

> This court has, in some cases, defined the willful and knowing standard as synonymous with bad faith. *Arnold*, 19 S.W.3d at 789;[7] *Contemporary Media*, 1999 WL 2922[]64, at *4-5;[8] *Capital Case Resource Center of Tennessee, Inc. v. Woodall,* No. 01-A01-9104-CH-00150, 1992 WL 12217 (Tenn.Ct.App. Jan. 29, 1992) (no Tenn. R.App. P. 11 application filed). Despite the language used, however, the courts in each of these cases

---

[7] *Arnold v. City of Chattanooga*, 19 S.W.3d 779, 789 (Tenn. Ct. App. 1999).
[8] *Contemporary Media, Inc. v. City of Memphis*, No. 02A01-9807-CH00211, 1999 WL 292264, at *4-5 (Tenn. Ct. App. May 11, 1999).

actually applied an analysis based on the state of existing law. The *Arnold* and *Contemporary Media* courts also adopted the Black's Law Dictionary definition of bad faith, which includes an element of fraud, sinister motive, dishonest purpose, ill will, or similar intent. *Arnold*, 19 S.W.3d at 789. We do not believe that inserting this element into the statutory standard is consistent with the Act or the purpose of the attorney fee provision. The equation of the knowing and willful statutory standard with bad faith was first made in the *Capital Case Resource Center* opinion, but that court did not adopt the definition used in the later opinions. **In fact, the court analyzed the existence of bad faith by applying the Tenn. R. Civ. P. 11 standard of whether the argument for the refusal of access was warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.** 1992 WL 12217, at \*9. Thus, the *Capital Case Resource Center* court defined bad faith as the absence of Rule 11 good faith in the context of the legal arguments made. In *Combined Communications*, 1994 WL 123831 at \*4,[9] this court held that the Act's attorneys fee provision did not apply where a governmental entity's unsuccessful attempt to protect a public record from disclosure meets the Rule 11 standard. No reference was made to bad faith.

*The Tennessean*, 2004 WL 290705, at \*9 n.9 (emphasis added).[10] We agree that a heightened showing of "ill will" or "dishonest purpose" is not necessary in order to establish willfulness under the statute.[11] As noted by *The Tennessean* court, *the majority of cases discussing willfulness under the Act have analyzed the issue in terms of the law's clarity at the time a records request is made*, even in spite of references that the willfulness standard is one synonymous to a bad faith requirement.

We acknowledge that an opinion of this Court's Eastern Section, *Little v. City of Chattanooga*, did, in fact, analyze willfulness in terms of a bad faith standard. *Little*, 2012 WL 4358174, at \*15 ("The record supports the conclusion that the City **acted**

---

[9] *Combined Commc'ns, Inc. v. Solid Waste Region Bd.*, No. 01-A-01-9310-CH00441, 1994 WL 123831, at \*4 (Tenn. Ct. App. Apr. 13, 1994).

[10] We note that the *Contemporary Media* case discussed in *The Tennessean* was appealed to the Tennessee Supreme Court, and certiorari was granted. Prior to oral argument before the Supreme Court, however, the parties dismissed the appeal by agreement. An order dismissing the appeal was entered on January 14, 2000.

[11] Most of this Court's opinions reviewing awards of attorneys' fees under the TPRA have involved cases where records custodians have refused to provide records by asserting that the records requested were exempt from disclosure. *See Greer v. City of Memphis*, 356 S.W.3d 917, 922 (Tenn. Ct. App. 2010). Although this case does not involve a refusal of records based on an alleged exemption, we consider it analogous to the typical case inasmuch as the County's refusal to provide Mr. Friedmann records was predicated on an alleged legal justification, i.e., his failure to make an in-person request.

**consciously to withhold the records with a dishonest purpose**.") (emphasis added).[12] We also acknowledge that some of this Court's statements in *Greer v. City of Memphis*, 356 S.W.3d 917 (Tenn. Ct. App. 2010), indicate that a higher bar for "willfulness" is required than is suggested by *The Tennessean* court. Although we stated in *Greer* that the willfulness analysis "evaluates the validity of the refusing entity's legal position supporting its refusal[,]" *id.* at 921, we also remarked that "the finding that a municipality willfully withheld public documents requires *evidence* that the withholding entity acted consciously in furtherance of a dishonest purpose or moral obliquity." *Id.* at 923 (citation omitted). We disagree with *Greer* to the extent that it suggests that evidence of a "dishonest purpose" or "moral obliquity" is required for a finding of willfulness under the TPRA. Although we recognize that this Court has used such language when describing willfulness, we do not think such standards should be engrafted into the statute. First, the statute does not state that a bad faith standard is to apply. Tenn. Code Ann. § 10-7-505(g) (2012). As *The Tennessean* court observed, the first case that equated bad faith with willfulness was *Capital Case Resource Center of Tennessee, Inc. v. Woodall*, No. 01-A-019104CH00150, 1992 WL 12217 (Tenn. Ct. App. Jan. 29, 1992). That case, however, defined bad faith simply in terms of whether the refusal of access to public records was justified by existing law or by a good faith argument for the extension, modification, or reversal of existing law. *Id.* at *9. Although several courts purported to substitute the Black's Law Dictionary definition of bad faith for willfulness following the *Capital Case Resource Center* case, the statute does not mandate a heightened showing of "ill will," "furtive design," or any other similar connotation. We do not agree with the prior decisions of this Court that have seemingly taken such language and engrafted it into the statutory standard. To the extent that the determination of willfulness under the statute is a "bad faith" inquiry, that inquiry should focus on whether there is an absence of good faith with respect to the legal position a municipality relies on in support of its refusal of records.

Although some of our previous decisions have suggested to the contrary,[13] we observe that the Tennessee Supreme Court has failed to provide any definitive guidance on this issue. In *Schneider v. City of Jackson*, the Tennessee Supreme Court merely observed that "[t]he element of 'willfully' required by [the TPRA] **has been described** as synonymous to a bad faith requirement." *Schneider v. City of Jackson*, 226 S.W.3d 332, 346 (Tenn. 2007) (emphasis added). The *Schneider* court did not affirmatively state that it was adopting a "bad faith" standard, and its analysis did not suggest that a heightened showing of willfulness is required in cases where records custodians deny access to records. Moreover, the *Schneider* court did not specifically elaborate on what a "bad faith" standard would entail. In discussing what constituted willful behavior under the

---

[12] The *Little* court noted, however, that other authority opposed the insertion of a bad faith element into the statutory standard. *Id.* at *14 n.7.

[13] *E.g.*, *Custis v. Metro. Nashville Police Dep't*, No. M2011-02169-COA-R3-CV, 2012 WL 4847091, at *4 (Tenn. Ct. App. Oct. 10, 2012) (concluding that the Tennessee Supreme Court adopted a "bad faith" analysis in 2007).

Act, the *Schneider* court stressed that "Tennessee courts must not impute to a governmental entity the 'duty to foretell an uncertain juridical future.'" *Id.* (citation omitted).

In *Schneider*, newspaper reporters sought access to field interview cards generated by city police officers. *Id.* at 334-35. Although the city denied requests for the records claiming that they were privileged under the law enforcement privilege, the Tennessee Supreme Court ultimately held that a law enforcement privilege did not exist. *Id.* at 336, 344. In its analysis of whether the newspaper reporters were entitled to attorneys' fees under the TPRA, the *Schneider* court appeared to focus on the validity of the position that the city used to support its refusal of the requested records:

> We conclude that the record supports the trial court's determination that Petitioners are entitled to recover attorneys' fees and the trial court's award of attorneys' fees. Petitioners requested the field interview cards on two occasions, yet the City never reviewed the cards. Rather, the City maintained that the field interview cards were exempt "period," pursuant to a common law privilege that had neither been adopted in Tennessee nor even mentioned in a Tennessee case, and which had been implicitly rejected in *Holt*. Moreover, the City asserted the law enforcement privilege as if it were a blanket privilege, yet the Court of Appeals, and other jurisdictions in which it is applied, emphasize that the law enforcement privilege is a qualified privilege and does not under any circumstances provide blanket protection to governmental records. Thus, recognizing that at least a portion of the field interview cards were subject to disclosure would not have required the City "to foretell an uncertain juridical future." The record supports the trial court's finding [that] the City willfully refused to disclose the field interview cards.

*Id.* at 347 (internal citations omitted). Again, notwithstanding its acknowledgement that "[t]he element of 'willfully' . . . *has been described* as synonymous to a bad faith requirement[,]" *id.* at 346 (emphasis added), nowhere does the *Schneider* court explicitly adopt such a standard, nor does its analysis suggest that dishonest motives or purposes must accompany a records custodian's refusal of records. In fact, the Supreme Court's analysis seems to track the same basic standard this Court found controlling in *The Tennessean v. City of Lebanon*. To the extent that *Schneider* endorsed a "bad faith" standard, our reading of the opinion compels us to conclude that "willfulness" is not to be measured in terms of "moral obliquity" or "dishonest purposes," but rather, in terms of the relative worth of the legal justification cited by a municipality to refuse access to records.[14]

---

[14] Indeed, we note that immediately following its acknowledgment that the element of "willfully" has been described as synonymous to a bad faith requirement, the *Schneider* court explained: "Stated

In addition, we note that the Act itself contains textual support for our conclusion regarding the standard required for willfulness. As already noted, the attorneys' fees provision expressly states that "[i]n determining whether the action was willful, **the court may consider any guidance provided to the records custodian by the office of open records counsel**[.]" Tenn. Code Ann. § 10-7-505(g) (2012) (emphasis added). By permitting courts to consider what guidance may have been provided to a records custodian from the OORC in a particular case, the legislature has permitted courts to measure willfulness in terms of the legal expectations that should have attached to a particular public records request. As *The Tennessean* court described the analysis that is to be followed:

> Th[e] analysis emphasizes the component of the statutory standard that the entity or its officials know that the record sought is public and subject to disclosure. It evaluates the validity of the refusing entity's legal position supporting its refusal; critical to that determination is an evaluation of the clarity, or lack thereof, of the law on the issue involved.

*The Tennessean*, 2004 WL 290705, at *9.

In the case at bar, we conclude that the trial court erred in failing to award Mr. Friedmann reasonable attorneys' fees and costs under the TPRA. Although the trial court found that Sheriff Dalton did not willfully deny Mr. Friedmann access to the requested records due to the Sheriff's "reliance upon his counsel's advice and his willingness to produce the records upon personal appearance[,]" the trial court's finding of a lack of willfulness was in error. Moreover, the considerations cited by the trial court do not support its decision not to award fees. The fact that Sheriff Dalton may have been willing to allow access to the requested records upon a personal appearance does not alter the reality that Mr. Friedmann was not legally required to make a personal appearance in order to request them.

On numerous occasions prior to the filing of this lawsuit, Mr. Friedmann, the counsel for *Prison Legal News*, and the OORC apprised the County and the Sheriff's Office of the relevant law pertaining to Mr. Friedmann's records request. In his email correspondence with Ms. Wright, Mr. Friedmann repeatedly insisted that he was not

---

differently, the Public Records Act does not authorize a recovery of attorneys' fees if the withholding governmental entity acts with a good faith belief that the records are excepted from the disclosure." *Schneider*, 226 S.W.3d at 346. We further note that, notwithstanding its conclusion that the newspaper reporters were entitled to recover attorneys' fees, the *Schneider* court's opinion contained no discussion concerning whether the city in that case had any dishonest motivations that prompted its refusal to provide access to the field interview cards. Nor do we believe that the Supreme Court intended for the applicable standard to require such conduct. Again, the analysis in *Schneider* focused squarely on the validity of the position that the city used to support its refusal of access to the requested records.

required to appear in person in order to make a public records request. In particular, we note that on February 21, 2014, Mr. Friedmann directed the Sheriff's Office to consider published guidance on this issue offered by the OORC. Moreover, on April 17, 2014, Mr. Friedmann emailed Ms. Wright and attached an opinion from the OORC that applied specifically to his public records request. As already noted, that opinion concluded that "to the extent that a requestor is able to sufficiently identify the records for which copies are being requested . . . the requestor is not required to appear in person either to submit a public records request or [to] retrieve the requested records." Mr. Haywood, the County's attorney, was also directed to consider the relevant law on several occasions. On March 12, 2014, Ms. Hodge contacted Mr. Haywood directly on behalf of the OORC and informed him that citizens were not required to appear in person to make a public records request. The same message was conveyed by counsel for *Prison Legal News* on March 14, 2014.

Although Mr. Haywood argued on appeal that Mr. Friedmann was denied access to records due to residency concerns, these concerns were not communicated to Mr. Friedmann until the morning of trial. As the history of correspondence among the parties reveals, Mr. Friedmann's request to obtain records was generally met with the same refrain: to get the records, he would need to make a personal appearance. With respect to his renewed March 24 request, he was simply re-directed once again to Mr. Haywood.[15] At no point did the Sheriff's Office's responses indicate a willingness to process Mr. Friedmann's records request absent a personal appearance. Given the state of the law and the communication of that law to both the Sheriff's Office and the County Attorney, Appellees' failure to comply with Mr. Friedmann's records request was willful. They were not faced with an "uncertain juridical future." *Memphis Publ'g Co.*, 871 S.W.2d at 689. In addition to having the benefit of *Waller*'s clear statement that a citizen's personal presence is not required to make a public records request, the Appellees also had the benefit of a 2006 Tennessee Attorney General's Opinion expressly acknowledging that "Tennessee courts have held that a citizen's personal presence is not required in order to request copies of a public record, if such citizen can sufficiently identify the documents that he or she wishes to obtain[.]" Tenn. Op. Atty Gen. No. 06-069, 2006 WL 1197463, at *2 (April 12, 2006). Of course, as we have emphasized, the OORC also advised the County that Mr. Friedmann's records request did not require a personal appearance to be processed. Such guidance is relevant to a determination of whether Appellees' actions were willful. Tenn. Code Ann. § 10-7-505(g) (2012). Given the foregoing, notwithstanding the Sheriff's Office's claimed reliance on Mr. Haywood's legal advice, we conclude that the Sheriff's Office's insistence on a personal appearance constituted a willful denial of access to the requested records.[16]

---

[15] As previously noted, the Sheriff's Office did not respond to the March 24 request until April 22.

[16] As custodian of the public records requested by Mr. Friedmann, the Sheriff's Office had a duty to promptly process his records request. The Sheriff's Office never asserted that any of the requested records were exempt from disclosure, but instead refused to process the request unless Mr. Friedmann made a personal appearance. The fact that the Sheriff's Office believed a personal appearance was

In addition to erroneously concluding that Sheriff Dalton did not willfully deny Mr. Friedmann access to the requested records, the trial court erred in placing special emphasis on Sheriff Dalton's questioning of Mr. Friedmann's residency. As previously noted, the trial court reasoned that such actions were appropriate considerations that negated against an award of attorneys' fees. Having reviewed the record transmitted to us, we conclude that the trial court's reasoning on this issue is in error. Sheriff Dalton testified that his specific concerns about Mr. Friedmann's residency had not been uncovered until after the Petition for Access and to Show Cause was filed. Moreover, the evidence before the trial court demonstrated that Mr. Friedmann was not aware of any residency concerns until immediately prior to entering the courtroom for the June 4, 2014, hearing. We fail to see how Sheriff Dalton's investigation into residency can be considered a factor mitigating against an award of attorneys' fees when Mr. Friedmann was never given any notice that his Tennessee citizenship was a concern. Again, at the time the Petition for Access and to Show Cause was filed, the only thing that had been communicated to Mr. Friedmann regarding his records request was that he would need to make his records request in person.

From our review of the trial court's analysis, we conclude that it abused its discretion in denying Mr. Friedmann's request for an award of attorneys' fees and costs pursuant to Tennessee Code Annotated § 10-7-505(g). This is a case marked by Mr. Friedmann's repeated attempts to access public records, and despite his own advocacy and that of his counsel and the guidance offered by the OORC, the Sheriff's Office and the County failed in their statutory duty to promptly process his records request. As is evident from our analysis in this Opinion, the trial court misapplied the TPRA in several respects. The trial court not only erred in analyzing the Sheriff's Office's initial responses under the Act, but it also erred in its willfulness assessment and in reasoning that Sheriff Dalton's residency investigation was relevant to the issue of attorneys' fees. The trial court's finding that Mr. Friedmann is not entitled to attorneys' fees is hereby reversed. We remand this case to the trial court for the entry of an order against the County awarding Mr. Friedmann his reasonable attorneys' fees and costs incurred in his efforts to obtain the requested public records, as provided by the TPRA.[17]

---

required does not militate against a finding of willfulness in this case. Neither does its claimed reliance on the advice of Mr. Haywood. At the time of Mr. Friedmann's records request, the law was clear that a personal appearance was not required. There was no "uncertain juridical future," and yet, the Sheriff's Office failed to carry out its responsibility in facilitating access to governmental records.

[17] The trial court's award of attorneys' fees provided by Tennessee Code Annotated § 10-7-505(g) should not include any amounts incurred on appeal. It is not necessary to determine whether Mr. Friedmann is entitled to any attorneys' fees incurred on appeal because that issue was not properly raised as an issue for our review. As the Tennessee Supreme Court explained in *Killingsworth v. Ted Russell Ford, Inc.*, absent any statute or rule directing otherwise, a party seeking attorneys' fees incurred on appeal must direct its request to the appellate court in a timely manner. *Killingsworth v. Ted Russell Ford, Inc.*, 205 S.W.3d 406, 410-11 (Tenn. 2006) (explaining that "[a] claim for appellate attorney's fees is an issue that should be set before the appellate court because a remand to the trial court is not a foregone conclusion"). Under

## V. Conclusion

Although the trial court ultimately found that Mr. Friedmann was entitled to the requested records, it erred in determining that the Sheriff's Office's initial responses did not constitute denials under the TPRA. The trial court also erred in declining to award Mr. Friedmann reasonable attorneys' fees and costs pursuant to Tennessee Code Annotated § 10-7-505(g). We hereby reverse the decision of the trial court and remand this case for the sole purpose of holding further proceedings necessary to determine the amount of reasonable attorneys' fees and costs that Mr. Friedmann is entitled to recover against Marshall County. Costs on appeal are assessed against the Appellee Marshall County, for which execution may issue if necessary.

_____
ARNOLD B. GOLDIN, JUDGE

---

Tennessee Rule of Appellate Procedure 27(a)(4), an appellant's brief must contain a statement of the issues presented for review. The statement of issues in Mr. Friedmann's appellate brief does not contain a claim for appellate attorneys' fees.