IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 6, 2017 Session

## COFFEE COUNTY BOARD OF EDUCATION v. CITY OF TULLAHOMA

Appeal from the Chancery Court for Coffee County
No. 2014-CV-179     Vanessa Jackson, Judge

_____

### No. M2017-00935-COA-R3-CV

_____

This is a controversy between the City of Tullahoma and Coffee County about the proper distribution of a portion of liquor by the drink revenues collected in Tullahoma. The trial court ruled that the distribution provisions of Tenn. Code Ann. § 57-4-306(2)(A) were not effective in Coffee County and that the statute was ambiguous. The trial court resorted to the legislative history to determine that Tullahoma should keep the funds addressed in Tenn. Code Ann. § 57-4-306(2)(A). We do not find the statutory language ambiguous and reverse the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

Eric J. Burch, Manchester, Tennessee, for the appellant, Coffee County Board of Education.

Mark E. McGrady and Kristin Berexa, Nashville, Tennessee, for the appellee, City of Tullahoma.

### OPINION

Tennessee Code Annotated, Title 57, Chapter 4 addresses the consumption of alcoholic beverages on premises, commonly known as liquor by the drink. Chapter 4 is "effective in any jurisdiction which authorizes the sale of alcoholic beverages for consumption on the premises in a referendum." Tenn. Code Ann. § 57-4-103(a)(1). A tax of fifteen percent (15%) of the sales price of all alcoholic beverages sold for consumption on the premises is assessed. Tenn. Code Ann. § 57-4-301(c). The tax is collected by the retailer from the consumer and forwarded to the commissioner of

revenue. Tenn. Code Ann. § 57-4-302(1). The commissioner distributes the taxes as follows:[1]

(1) Fifty percent (50%) to the general fund to be earmarked for education purposes; and

(2) Fifty percent (50%) to the local political subdivision as follows:

(A) One half (½) of the proceeds shall be expended and distributed in the same manner as the county property tax for schools is expended and distributed; provided, however, that except in counties having a population of not less than twenty-seven thousand nine hundred (27,900) nor more than twenty-seven thousand nine hundred twenty (27,920), according to the 1980 federal census or any subsequent federal census, any proceeds expended and distributed to municipalities which do not operate their own school systems separate from the county are required to remit one half (½) of their proceeds of the gross receipts liquor-by-the-drink tax to the county school fund; and

(B) The other one half (½) shall be distributed as follows:

(i) Collections of gross receipts collected in unincorporated areas, to the county general fund; and

(ii) Collections of gross receipts in incorporated cities and towns, to the city or town wherein such tax is collected.

Tenn. Code Ann. § 57-4-306(a). The voters of Tullahoma have authorized the sale of liquor by the drink within the city. The voters of Coffee County have not authorized the sale of liquor by the drink within the county. Both Coffee County and Tullahoma operate their own school systems.

In May 2014, the Coffee County Board of Education filed this action against the City of Tullahoma and the City of Manchester[2] seeking to recover its share of liquor by the drink tax revenues. Eventually, motions for summary judgment were filed by each side. In an order entered on April 25, 2017, the trial court granted Tullahoma's motion for summary judgment and denied the Board's motion for partial summary judgment. The trial court found that, because Coffee County had not approved liquor by the drink by referendum, the distribution provisions of Tenn. Code Ann. § 57-4-306(a)(2)(A) were not effective in Coffee County. The trial court also found "that the meaning of the phrase

---

[1] At issue in this action is the version of Tenn. Code Ann. § 57-4-306 in effect prior to the Tennessee General Assembly's 2014 amendment of that statutory section. *See* 2014 TENN. PUB. ACTS, Ch. 901 § 1.

[2] The City of Manchester settled its portion of the law suit and is not a party to this appeal.

'expended and distributed in the same manner as the county property tax for schools is expended and distributed' in § 57-4-306(a)(2)(A) is not clear." Specifically, the trial court stated that the language was ambiguous, in that it could be interpreted two ways: the Board viewed the language as requiring Tullahoma to distribute the liquor by the drink tax funds to the three school systems in Coffee County based on average daily attendance. Tullahoma, on the other hand, argued that it is required to spend the one-half it receives under § 57-4-306(a)(2)(A) in the same manner as the county property tax for schools would be expended within Tullahoma. The trial court opted for Tullahoma's view. The Board appealed.

ANALYSIS

We must begin our analysis, in all fairness, with the acknowledgment that another panel has already addressed the issues presented in this case. In four Eastern Section cases, a panel of this court recently decided in favor of the cities involved. *See Bradley Cnty. Sch. Sys. ex rel. Bradley Cnty. Bd. of Educ. v. City of Cleveland,* No. E2016-01030-COA-R3-CV, 2017 WL 6598557 (Tenn. Ct. App. Dec. 27, 2017); *Sullivan Cnty., v. City of Bristol,* No. E2016-02109-COA-R3-CV, 2017 WL 6598559 (Tenn. Ct. App. Dec. 27, 2017); *Blount Cnty. Bd. of Educ. v. City of Maryville,* No. E2017-00047-COA-R3-CV, 2017 WL 6606855 (Tenn. Ct. App. Dec. 27, 2017); *Washington Cnty. Sch. Sys. ex rel. Washington Cnty. Bd. of Educ. v. City of Johnson City,* No. E2016-02583-COA-R9-CV, 2017 WL 6603656 (Tenn. Ct. App. Dec. 27, 2017). This does not, however, relieve us of our obligation to address the instant case on its own merits.

As in the other cases, the facts in this case are "essentially undisputed." *Bradley Cnty.*, 2017 WL 6598557, at *1. The sole dispute is the distribution of the tax receipts under Tenn. Code Ann. § 57-4-306(a)(2)(A). It is a question of the interpretation of the statutes, which is a question of law. *Garrison v. Bickford*, 377 S.W.3d 659, 663 (Tenn. 2012). The Board presents the issue rather generically: "Does Tenn. Code Ann. § 57-4-306 require that one half of all liquor-by-the-drink sales tax revenue received by the City be distributed as is the County property tax for education?" Tullahoma presents the issues as "Does the 'Effective Provision' contained in Tenn. Code Ann. § 57-4-103(a)(1) prevent a county, which has not approved liquor by the drink ('LBTD'), from collecting a share of LBTD revenues received by a city, which has approved LBTD by local option referendum?" and "Does Tenn. Code Ann. § 57-4-306 (2013) require cities with city school systems to share with county school systems a portion of the LBTD tax proceeds received by the cities?"

Effective Provision

Tennessee Code Annotated section 57-4-103(a)(1) states: "This chapter shall be effective in any jurisdiction which authorizes the sale of alcoholic beverages for consumption on the premises in a referendum in the manner prescribed by § 57-3-106 . . .

- 3 -

." The trial court found that, because Coffee County had not approved liquor by the drink by referendum, the distribution provisions of Tenn. Code Ann. § 57-4-306(a)(2)(A) were not effective in Coffee County. We disagree.

"'The text of the statute is of primary importance, and the words must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose.'" *Friedmann v. Marshall Cnty.,* 471 S.W.3d 427, 433 (Tenn. Ct. App. 2015) (quoting *Mills v. Fulmarque, Inc.* 360 S.W.3d 362, 368 (Tenn. 2012)). Like the *Bradley County* court, we find that the "language regarding the effectiveness of Chapter 4 to be clear and unambiguous." *Bradley Cnty.*, 2017 WL 6598557, at *9. Tennessee Code Annotated section 57-4-103(a)(1) plainly states that Chapter 4 of Title 57 ("this chapter")[3] is in effect in any jurisdiction in which liquor by the drink has been authorized by referendum (such as the city of Tullahoma). Thus, Tullahoma is required to follow the dictates of Chapter 4.

Requirements of Tenn. Code Ann. § 57-4-306(a)(2)(A)

Tennessee Code Annotated section 57-4-306 governs the distribution of liquor by the drink tax collections. Fifty percent of the gross collections go to the state earmarked for education purposes. Tenn. Code Ann. § 57-4-306(a)(1). Half of the remaining fifty percent goes to Tullahoma. Tenn. Code Ann. § 57-4-306(a)(2)(B). The distribution of the remaining twenty-five percent is controlled by Tenn. Code Ann. § 57-4-306(a)(2)(A).

The trial court found that the language of Tenn. Code Ann. § 57-4-306(a)(2)(A) "is not clear." The trial court determined the language to be ambiguous because it could be interpreted in two ways. *See Gragg v. Gragg*, 12 S.W.3d 412, 415 (Tenn. 2000) ("Where as here, the parties legitimately have different interpretations of the same statutory language, an ambiguity exists . . . ."). The Board argues that the language requires Tullahoma to distribute the liquor by the drink tax funds to the three school systems in Coffee County based on average daily attendance. Tullahoma, on the other hand, argues that it is required to spend the one-half it receives under §57-4-306(a)(2)(A) in the same manner as the county property tax for schools would be expended within Tullahoma.

Initially, we note that we agree with the *Bradley County* court that the exception in the language of Tenn. Code Ann. § 57-4-306(a)(2)(A) applies only to Bedford County. *Bradley Cnty.*, 2017 WL 6598557, at *7. Omitting the exception for clarity sake, we have:

---

[3] The Tennessee Code Annotated is divided into titles, chapters, parts and sections. For example, Tenn. Code Ann. § 57-4-103 is in Title 57, Chapter 4, Part 1, Section 03. *See* Tenn. Code Ann. Vol. 10B, User's Guide, Numbering System, xii.

(2) Fifty percent (50%) to be distributed to the local political subdivision as follows:[4]

One half (½) of the proceeds shall be expended and distributed in the same manner as the county property tax for schools is expended and distributed; provided, however, that . . . any proceeds expended and distributed to municipalities which do not operate their own school systems separate from the county are required to remit one half (½) of their proceeds of the gross receipts liquor-by-the-drink tax to the county school fund;

Tenn. Code Ann. § 57-4-306(a)(2)(A); *see also Bradley Cnty.*, 2017 WL 6598557, at *7. The *Bradley County* court found this language problematic:

it is possible to reasonably interpret the proviso as simply operating to ensure that a municipality without its own school system would remit one-half of its liquor-by-the-drink proceeds to the county within which it was located. It is also possible to reasonably interpret the proviso as operating to require <u>solely</u> those municipalities <u>not</u> operating their own school systems to remit proceeds to the counties in which they were located, effectively exempting those municipalities that operated their own school systems.

*Bradley Cnty.*, 2017 WL 6598557, at *8. Thus, the *Bradley County* court determined Tenn. Code Ann. § 57-4-306(a)(2)(A) to be ambiguous. *Id.* (citing *Bryant v. HCA Health Servs. of N. Tenn., Inc.*, 15 S.W.3d 804, 809 (Tenn. 2000) ("A statute is ambiguous if the statute is capable of conveying more than one meaning.")). The *Bradley County* court went on to consider the statutory framework, legislative history, and Tennessee Attorney General opinions. *Id.* at *8-15. We do not consider such analysis necessary because we do not consider the statute ambiguous.

Ambiguity in a statute must arise from the common usage of the language written by the legislature, not from "dueling characterizations" of what the legislature "really meant." *CBS, Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1225 (11th Cir. 2001). "Only if the plain language of a statute is ambiguous must the Court look beyond the statutory language to determine the legislature's intent." *Walker v. Sunrise Pontiac-GMC Truck, Inc.,* 249 S.W.3d 301, 309 (Tenn. 2008). When interpreting a statute, we look at the plain meaning of the words used. "'The text of the statute is of primary importance, and the words must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose.'" *Friedmann,* 471 S.W.3d at

---

[4] The City maintains that the substitution of "as follows:" for a period by the Code Commission in the 1980 recodification changes the sense of the language. We simply disagree and would note that, in the almost 40 years since the recodification, the legislature, which is presumed to know the law, *Johnson v. Hopkins*, 432 S.W.3d 840, 848 (Tenn. 2013), has not seen fit to alter the language to the pre-1980 status even though the code section has been amended several times.

433 (quoting *Mills*, 360 S.W.3d at 368). To this court, there is no ambiguity arising from the plain wording of the statute. Parties proffering different interpretations of a statute do not automatically create an ambiguity. *Powers v. State*, 343 S.W.3d 36, 50 n.20 (Tenn. 2011). "A mere disagreement among litigants over the meaning of a statute does not prove ambiguity; it usually means that one of the litigants is simply wrong." *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 461 (1999) (Thomas, J., joined by Scalia, J. concurring in judgment.)[5]

As to the funds in question, Tenn. Code Ann. § 57-4-306(a)(2) states that 50 percent of the tax proceeds goes to the local political subdivision. In this instance, the local political subdivision is Tullahoma because it collected the tax proceeds in question. *Accord, Bradley Cnty.*, 2017 WL 6598557, at *8 (concluding that "the 'local political subdivision' receiving liquor-by-the-drink taxes from the commissioner [is] one that had passed a liquor-by-the-drink referendum."). The natural and ordinary meaning of subsection (A) is that one-half of the 50 percent (*i.e.*, 25 percent) will be expended and distributed as is the county property tax for schools, except when the city does not operate its own school system, then one-half of the 50 percent (*i.e.*, 25 percent) goes to the county school fund.[6]

We do not disagree with our learned cohorts lightly, but in our considered view it is simply not possible to reasonably read this language to also mean a city that operates its own school system does not have to remit any funds to the county. Tennessee Code Annotated section 57-4-306(a)(2)(A) presents two options – turn the 25 percent over to the county if the city does not operate a school system, or expend the 25 percent like the

---

[5] The City offers legislative history in support of its interpretation. When the statutory language is clear, "our obligation is to enforce the written language without reference to the broader statutory intent, the history of the legislation, or other sources*." Lawrence Cnty. Educ. Ass'n v. Lawrence Cnty. Bd. of Educ.*, 244 S.W.3d 302, 309 (Tenn. 2007). Moreover, "we do not resort to legislative history to cloud a statutory text that is clear." *Ratzlaf v. United States*, 510 U.S. 135, 147-48 (1994).

[6] Tennessee Code Annotated section 49-3-315(a) (2016) provides in pertinent part:

> For each LEA [local education agency] there shall be levied for current operation and maintenance not more than one (1) school tax for all grades included in the LEA. Each LEA shall place in one (1) separate school fund all school revenues for current school operation purposes received from the state, county and other political subdivisions, if any. . . . All school funds for current operation and maintenance purposes collected by any county . . . shall be apportioned by the county trustee among the LEAs in the county on the basis of the WFTEADA [weighted full-time equivalent average daily attendance] maintained by each, during the current school year.

Thus, it appears that whether or not the city operates a school system, 25 percent will be spent on the basis of WFTEADA. A city with a school system must spend the funds "in the same manner as the county property tax for schools is expended and distributed," while a city without a school system must send the 25 percent to the county school fund. Tenn. Code Ann. § 57-4-306(a)(2)(A).

- 6 -

county expends the county property tax.  Tullahoma would have us say that the statute means the city should spend the money in the same manner as the county property tax for schools would be expended *within the city*.  To do so would require adding words to the statute.  "[C]ourts 'must be circumspect about adding words to a statute that the General Assembly did not place there.'" *Johnson v. Hopkins*, 432 S.W.3d 840, 848 (Tenn. 2013) (quoting *Coleman v. State*, 341 S.W.3d 221, 241 (Tenn. 2011)).  "When the meaning of a statute is clear, '[courts] apply the plain meaning without complicating the task' and enforce the statute as written."  *Id*. (quoting *Lind v. Beaman Dodge, Inc*., 356 S.W.3d 889, 895 (Tenn. 2011)).


CONCLUSION


The judgment of the trial court is reversed, and this matter is remanded with costs of appeal assessed against the City of Tullahoma.


_____
ANDY D. BENNETT, JUDGE