IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 16, 2017 Session

## RICKEY JOE TAYLOR v. TOWN OF LYNNVILLE

**Appeal from the Chancery Court for Giles County**
**No. 6496      David L. Allen, Judge**

_____

**No. M2016-01393-COA-R3-CV**

_____

This is an appeal from a dispute litigated under the Tennessee Public Records Act. Although the trial court concluded that the Town of Lynnville violated the Act by denying the petitioner's request for records, the court held that the denial of records was not willful. Accordingly, the petitioner's request for attorney's fees was denied. Having reviewed the record transmitted to us on appeal, we disagree with the trial court's determination that the denial of records was not willful and reverse the trial court on this issue. In light of our conclusion that the denial of records was willful, we remand the case to the trial court to reconsider its decision to deny an award of attorney's fees. We also remand for a determination of Mr. Taylor's costs and attorney's fees incurred in this appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in part, Reversed in part and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., joined, and BRANDON O. GIBSON, J., filed a separate concurring opinion.

Robert Dalton and David Hudson, Lewisburg, Tennessee, for the appellant, Rickey Joe Taylor.

Kristin E. Berexa and Ross V. Smith, Nashville, Tennessee, for the appellee, Town of Lynnville.

## OPINION

### BACKGROUND AND PROCEDURAL HISTORY

The present dispute stems from efforts taken by Rickey Joe Taylor ("Mr. Taylor") to access a number of public records held by the Town of Lynnville (the "Town"). The

public records sought by Mr. Taylor include, among other things, minutes from certain Town board meetings. As is relevant to this appeal, three public records requests are at issue. The first request for records was an oral request by Mr. Taylor that occurred in December 2015. A written request for records was subsequently made on January 6, 2016. Then, on January 20, 2016, Mr. Taylor made another public records request orally. The specific factual circumstances attendant to each of these requests will be discussed more fully below, but it should be noted that the Town did not provide Mr. Taylor access to the subject records for inspection as a result of his requests.

As a result of the Town's failure to permit inspection of the public records he had requested, Mr. Taylor filed a petition for access and to show cause in the Giles County Chancery Court on February 16, 2016.[1] Among other things, his petition alleged that the City Recorder for the Town, Amanda Gibson ("Ms. Gibson"), had conditioned his inspection of records on the payment of a $150.00 fee. The petition prayed that he be allowed to view the requested records without payment of a fee and also asked for an award of reasonable costs and attorney's fees pursuant to Tennessee Code Annotated section 10-7-505(g).

A show cause hearing was held by the Chancery Court on March 9, 2016, and on June 8, 2016, the Chancery Court entered an order memorializing its findings of fact and conclusions of law in the case. In pertinent part, the Chancery Court's June 8 order concluded that the Town had improperly denied Mr. Taylor's January 20, 2016 request for records. Although the Town was thus ordered to produce the requested records for inspection,[2] the Chancery Court concluded that because the denial of records had not been willful, Mr. Taylor's prayer for attorney's fees should be denied. This timely appeal then followed.

**ISSUES PRESENTED**

On appeal, Mr. Taylor raises a number of issues with respect to the trial court's analysis of his various records requests. In addition to asserting that the trial court erred in failing to conclude that the Town denied his December 2015 oral request and his January 6, 2016 written request, Mr. Taylor maintains that the trial court reached the erroneous conclusion that the Town's actions were not willful. He asserts that the trial

---

[1] Although the petition was brought against two of the Town's officials in addition to the Town itself, the Chancery Court determined that the Town was the only proper Respondent. No issue has been raised with respect to this determination on appeal.

[2] We note that the Town brought copies of the requested records to the show cause hearing. At that time, the Town's trial counsel stated that the Town was willing to provide the copies, "with no expense," "even though copies weren't requested."

court's denial of attorney's fees was improper and asks this Court to award him his reasonable costs and attorney's fees incurred on appeal. Although the Town maintains that any such relief is without merit, it separately asserts that the trial court incorrectly concluded that Mr. Taylor's January 20, 2016 request for records was denied.

## STANDARD OF REVIEW

Our review of a trial court's factual findings is de novo upon the record, accompanied by a presumption of correctness unless the preponderance of the evidence is otherwise. *Northland Ins. Co. v. State Farm Mut. Auto Ins. Co.*, 916 S.W.2d 924, 926 (Tenn. Ct. App. 1995). When an issue hinges on the credibility of witnesses, the trial court will not be reversed "unless there is found in the record clear, concrete, and convincing evidence other than the oral testimony of witnesses which contradict the trial court's findings." *Galbreath v. Harris*, 811 S.W.2d 88, 91 (Tenn. Ct. App. 1990) (citation omitted). Questions of law, including those pertaining to statutory interpretation, are reviewed de novo with no presumption of correctness. *In re Angela E.*, 303 S.W.3d 240, 246 (Tenn. 2010) (citations omitted).

## DISCUSSION

The public's right to examine governmental records has been recognized by Tennessee courts for more than a century. *Tennessean v. Metro. Gov't of Nashville*, 485 S.W.3d 857, 864 (Tenn. 2016) (citation omitted). In 1957, our General Assembly codified this public access doctrine by enacting the Tennessee Public Records Act ("TPRA"). *Schneider v. City of Jackson*, 226 S.W.3d 332, 339 (Tenn. 2007) (citing *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996)). The TPRA "governs the right of access to records of government agencies in this state," *Cole v. Campbell*, 968 S.W.2d 274, 275 (Tenn. 1998), and it plays "a crucial role in promoting accountability in government through public oversight of governmental activities." *Memphis Publ'g Co. v. Cherokee Children & Family Servs., Inc.*, 87 S.W.3d 67, 74 (Tenn. 2002) (citation omitted).

There is a "presumption of openness" under the TPRA and a "clear legislative mandate favoring disclosure of governmental records." *Schneider*, 226 S.W.3d at 340 (citations omitted). Indeed, the statute requires that "[a]ll state, county and municipal records shall, at all times during business hours . . . be open for personal inspection by any citizen of this state." Tenn. Code Ann. § 10-7-503(a)(2)(A). Moreover, unless the requested public record is specifically exempt from disclosure, the records custodian must promptly make it available for inspection. Tenn. Code Ann. § 10-7-503(a)(2)(B).

If it is not practicable for a record to be promptly available for inspection, a records custodian is required to do one of the following within seven business days:

(i)     Make the information available to the requestor;

(ii)    Deny the request in writing or by completing a records request response form developed by the office of open records counsel. The response shall include the basis for the denial; or

(iii)   Furnish the requestor a completed records request response form developed by the office of open records counsel stating the time reasonably necessary to produce the record or information.

*Id.* Failure to respond to a request in the manner described above shall constitute a denial, and the person making the request shall thereafter have a right to bring a petition for access to obtain judicial review. Tenn. Code Ann. § 10-7-503(a)(3); Tenn. Code Ann. § 10-7-505(a).

In this case, there does not appear to be any dispute that Mr. Taylor is entitled to access the public records that are at the center of his various public records requests. Instead, the dispute relates to whether the Town's specific responses to Mr. Taylor's requests constituted denials under the TPRA and whether Mr. Taylor is entitled to reasonable costs and attorney's fees for pursuing his records requests. In addressing these questions, we will begin by considering the circumstances of each request made by Mr. Taylor and the Town's corresponding response.

**December 2015 request**

The first records request at issue was made orally to the Town's mayor, Charles Jett ("Mr. Jett"), in December 2015. While that much is undisputed by the parties, we note that the specific timing and nature of Mr. Taylor's request was subject to conflicting testimony at the March 9, 2016 hearing. Whereas Mr. Jett testified that he thought Mr. Taylor had approached him outside of town hall on a day that the Town's offices were closed, Mr. Taylor testified that he had approached Mr. Jett inside town hall to verbally request records. The difference in this testimony, while seemingly somewhat marginal, is not without great significance. As previously noted, the TPRA provides that public records shall be open for personal inspection "at all times during business hours." Tenn. Code Ann. § 10-7-503(a)(2)(A). The breadth of this legislative mandate notwithstanding, it is clear that the right of inspection is available only "during business hours." *Id.* Indeed, records custodians are not required to grant rights of inspection during periods when their governmental offices are not open for the transaction of business.

- 4 -

In this case, the trial court implicitly accredited Mr. Jett's testimony with respect to the timing of the December 2015 request. In fact, in its June 8, 2016 findings of fact, the trial court stated as follows: "During the last week of December of 2015, Petitioner approached the Mayor[.] . . . [Mr. Jett] recalls town hall was closed that day. Town hall is only open for business on Monday, Wednesday and Friday from 8:00 to 3:00[.]" Given the trial court's finding that the December request for inspection was made on a day when the town hall was closed, the Town was not required to facilitate an inspection of public records on that date.[3] Again, under the TPRA, the legislative mandate is not absolute. Public records are only directed to be open for personal inspection "during business hours." *Id.* The Town was simply not required to give Mr. Taylor access to records at a time when the Town offices were closed for business.

**January 2016 written request**

The second records request was made in writing by Mr. Taylor on January 6, 2016, when he completed a written public records request form and submitted it at town hall. Two days later, Ms. Gibson, the City Recorder for the Town, sent Mr. Taylor a letter acknowledging his records request. Ms. Gibson's letter stated that the nonexempt records in the Town's possession would be available for Mr. Taylor's review on January 11 or January 13,[4] but it also advised that there would be an "upfront charge of $150.00." Although the letter stated that the "upfront charge" was to "cover the expense for copies and staff time," we note that Mr. Taylor's January 6 request form did not include a request for copies. Ms. Gibson ultimately acknowledged this fact at the March 9, 2016 hearing.

Under the TPRA, a records custodian "may not . . . assess a charge to view a public record unless otherwise required by law." Tenn. Code Ann. § 10-7-503(a)(7)(A). A citizen can only be charged in connection with a request for *copies* of public records.[5]

---

[3] Our holding that the Town had no duty under the facts in this case to provide access to records when the town hall was closed is not intended to suggest that a public records request can always be ignored simply because it is made outside of business hours. There may well be factual circumstances in which the Town would be required to later respond to a records request pursuant to the provisions of the TPRA, even though the request was itself transmitted to the Town while town hall was closed.

[4] As it turned out, Mr. Taylor did not appear to inspect the records on these dates.

[5] In her concurrence, our good friend and colleague Judge Gibson acknowledges that the plain text of the TPRA only permits labor costs to be assessed against a citizen in circumstances where the citizen has requested copies. Judge Gibson questions the sensibility of the statute, and by quoting to a prior version of Tennessee Code Annotated section 10-7-503, she suggests that it was the General Assembly's original intent to allow a governmental entity to charge for labor even if copies are not requested. As an initial matter, we are unconvinced that the prior version of the statute clearly reflected the intent suggested by

*See* Tenn. Code Ann. § 10-7-503(a)(7)(C) (noting that a records custodian may require a requestor to pay costs incurred in producing the requested material in the manner established by the Office of Open Records Counsel pursuant to Tennessee Code Annotated section 8-4-604); Tenn. Code Ann. § 8-4-604 (providing that the Office of Open Records Counsel shall establish a schedule of reasonable charges that a records custodian may use to charge a citizen requesting *copies* of public records). Thus, despite the purported grant of access to records afforded by Ms. Gibson's letter, such access was encumbered by the requirement of the payment of an upfront, illegal fee. Again, Mr. Taylor's written request did not request any copies. Inasmuch as charges for the *inspection* of public records are generally prohibited, Mr. Taylor's right of access should not have been conditioned on the payment of an upfront fee. In our view, the imposition of an impermissible condition on a record's availability constitutes a denial of a request for that record under the TPRA. *See Friedmann v. Marshall Cnty.*, 471 S.W.3d 427, 435 (Tenn. Ct. App. 2015) (holding that, although the government's response left the petitioner with the option of acquiring the records in person, the response was a denial inasmuch as the law entitled the petitioner to obtain copies of records without making a personal appearance). Insisting on an upfront fee is an illegitimate barrier to access when the records requestor is merely seeking to inspect available public records.[6] For these

_____

Judge Gibson. We need not undergo an extensive analysis of the former statutory scheme for purposes of this appeal, but suffice it to say, a strong case can be made that when the relevant provisions of that prior statutory scheme are read *in pari materia*, it becomes apparent that former section 10-7-503(a)(2)(C) singularly governed fees that could only be assessed when a request for *copies* was made. In other words, former section 10-7-503(a)(2)(C) was a mere placeholder until the Office of Open Records Counsel could create the "Schedule of Reasonable Charges."

As it is, the existing provisions of the TPRA clearly tie the assessment of labor charges to a request for copies of public records. Although Judge Gibson appears to question the wisdom of this policy choice, we do not share the same concerns. In our view, the General Assembly has enacted a measured approach that is consistent with the purpose of the TPRA. The TPRA plays "a crucial role in promoting accountability in government through public oversight of governmental activities," *Memphis Publ'g Co.*, 87 S.W.3d at 74 (citation omitted), and it is "to be broadly construed so as to give the fullest possible public access to public records." *Arnold v. City of Chattanooga*, 19 S.W.3d 779, 786 (Tenn. Ct. App. 1999) (citation omitted). Access is important, and there is no question that the requirement of the payment of money merely to inspect public records could serve as a barrier to access. As such, we are not troubled that the TPRA only allows for the assessment of labor charges in specified circumstances. Any such requirement for the payment of money that could accompany a request merely to view records could only serve as a deterrent to public access and governmental accountability.

[6] Regardless of the propriety of the Town's decision to assess an upfront charge, we note that Ms. Gibson's response letter raises a number of issues regarding the amount of the fees proposed to be assessed. Regarding the rates to be charged to Mr. Taylor, the letter states as follows: "Copies are .30 cents per copy and staff time is $12.00 per hour." The letter then goes on to state that "[a]djustment will be made on the upfront charge depending on time and copies made." Mr. Taylor objects to these terms for two reasons. First, he notes, correctly, that the "Schedule of Reasonable Charges" developed by the Office of Open Records Counsel pursuant to Tennessee Code Annotated section 8-4-604(a)(1) provides

reasons, we agree with Mr. Taylor that his written request, while ostensibly granted, was effectively denied for purposes of the TPRA.[7]

that a records custodian may charge fifteen cents ($0.15) for standard black and white copies. *See* Schedule of Reasonable Charges, Office of Open Records Counsel, *available at* http://www.comptroller.tn.gov/openrecords/forms.asp. Second, he correctly notes that a records custodian is not allowed to charge for the first hour of labor in producing records. *See id.* With regard to his first grievance (the cost per page), we note that the Town's decision to charge thirty cents per page is not itself improper. The "Schedule of Reasonable Charges" provides that a government can develop its own charges if its actual costs are higher than the suggested amounts. *Id.* However, higher charges for standard copies can only be assessed or collected "when there is documented analysis of the fact that the higher charges represent the governmental entity's actual cost of producing such material." *Id.* The record does not indicate whether such "documented analysis" exists with respect to the Town's costs, but our resolution of this specific question is ultimately unnecessary given our holding that it was improper for the Town to assess any upfront charges for the mere inspection of records. We merely caution records custodians to be mindful of the "Schedule of Reasonable Charges" and the specific guidance provided therein. With regard to Mr. Taylor's grievance concerning the proposed labor charges, it is unclear to us whether the Town actually was proposing to charge him for the first hour of labor. Although Ms. Gibson's letter listed the hourly labor charge that would be applied, it did not affirmatively indicate that the Town was going to deviate from subtracting the first hour "labor threshold," as is directed by the "Schedule of Reasonable Charges." With respect to our citations and quotations in this footnote, we note that our references are to the current version of the "Schedule of Reasonable Charges," which is maintained on the website for the Tennessee Comptroller of the Treasury in conformity with Tennessee Code Annotated section 8-4-604. *See* Tenn. Code Ann. § 8-4-604(b) ("The office of open records counsel shall make the policies and guidelines available on the Internet."). There are no material differences between the specific provisions cited under the current schedule, which was effective as of January 20, 2017, and those that existed under the prior version in effect at the time of this public records dispute.

[7] We recognize that Ms. Gibson had assumed that Mr. Taylor wanted copies of the requested public records, but as she herself admitted at the hearing of this matter, the form Mr. Taylor submitted at town hall did not contain such a request. Records custodians should not simply assume that a citizen seeking access to public records wants copies of the requested documents. We say this on account of what transpired in this case. As we have noted, a records custodian may charge a citizen for costs incurred in connection with a request for copies, and the Office of Open Records Counsel's "Best Practices & Guidelines," which was developed in accordance with Tennessee Code Annotated section 8-4-604(a)(4), specifically provides that governmental entities should "consider requiring and receiving either full or partial payment of estimated charges prior to production of copies when duplication costs for requested records are significant." Best Practices & Guidelines, Office of Open Records Counsel, *available at* http://www.comptroller.tn.gov/openrecords/forms.asp. If it was proper to assume that a citizen wanted copies of the requested records, a records custodian could, in accordance with the "Best Practices & Guidelines," always condition access to governmental records upon the payment of an upfront charge. This would be problematic inasmuch as a fee should not generally be charged for a mere inspection of records. Tenn. Code Ann. § 10-7-503(a)(7)(A) (noting that a records custodian may not assess a charge to view a public record unless otherwise required by law). By assuming copies are requested when none are asked for and thereafter insisting on an upfront payment as a condition on access, records custodians violate the right of a citizen to inspect public records without the payment of a fee. Similar to our citation to the "Schedule of Reasonable Charges," we note that our reference herein to the "Best Practices &

**January 2016 oral request**

The third records request at issue occurred on January 20, 2016, when Mr. Taylor appeared in town hall to request records orally. Ms. Gibson was present when he made his records request, and the entire encounter was recorded by video. The video recordings of the request, which were introduced into evidence at the March 9, 2016 show cause hearing, reveal the following sequence of events:

- Mr. Taylor asks to view the requested records.
- Ms. Gibson informs Mr. Taylor that she is "really busy" and initially suggests that he come back the following Friday.
- Ms. Gibson then informs Mr. Taylor that he can come back to inspect the records later that afternoon.
- When questioned to confirm this, Ms. Gibson again indicates that Mr. Taylor can return that afternoon to inspect the records.
- Mr. Taylor returns to town hall later that afternoon.
- Immediately upon Mr. Taylor's return, Ms. Gibson asks Mr. Taylor and his counsel if they had contacted Larry Sands, the Town's attorney.
- Mr. Taylor's counsel replies that he had attempted to contact Mr. Sands, whereupon Ms. Gibson indicates that Mr. Sands is in court.
- Ms. Gibson subsequently states that she is not going to allow Mr. Taylor to view the records and asserts that she needed notice.
- When Mr. Taylor's counsel confronts Ms. Gibson about her prior assurances that Mr. Taylor would be able to view the records that afternoon, Ms. Gibson simply informs Mr. Taylor's counsel that (a) she had tried to contact her attorney and (b) Mr. Taylor cannot view the records until the following Friday.
- Ms. Gibson then informs Mr. Taylor and his counsel that Mr. Taylor can view the records the following Friday *only if* he pays a $150.00 fee.
- Mr. Taylor and his counsel leave town hall without obtaining access to the requested records.

The trial court concluded that Mr. Taylor was denied records in violation of the TPRA as a result of his January 20, 2016 encounter. Although the Town challenges this conclusion, we are in agreement with the trial court that the Town denied Mr. Taylor's

---

Guidelines" is to the current version which is maintained on the website for the Tennessee Comptroller of the Treasury. As noted by the Town in its brief, the prior version of the "Best Practices & Guidelines" also encouraged up-front collection of payment prior to the production of copies.

January 20 request for records. Under the TPRA, a records custodian "shall not refuse [the] right of inspection to any citizen, unless otherwise provided by state law," and when a request is made, the records custodian "shall promptly make available for inspection any public record not specifically exempt from disclosure." Tenn. Code Ann. § 10-7-503(a)(2)(A)-(B). Although a records custodian has seven business days within which to respond to a records request in one of the three ways listed in Tennessee Code Annotated section 10-7-503(a)(2)(B)(i)-(iii), such manners of response are only available "[i]n the event it is not practicable for the record to be promptly available for inspection." Tenn. Code Ann. § 10-7-503(a)(2)(B). The default understanding of the statute is that a citizen may inspect public records promptly upon request. Any delayed access to nonexempt public records is contingent only on whether such prompt inspection is "practicable." *See id.* Here, the evidence does not demonstrate that a prompt access to the records was not practicable. Granted, prompt access was arguably not practicable when Mr. Taylor first appeared on January 20, 2016, as Ms. Gibson asserted that she was "really busy" at that time. However, even assuming her Town duties made it impracticable to facilitate a prompt inspection of records upon Mr. Taylor's initial request, Ms. Gibson assured Mr. Taylor that he could inspect the records if he returned later that afternoon. Of course, when Mr. Taylor returned as instructed, he did not gain access to the records.

Although the Town argues that prompt inspection was not practicable on January 20, we concur with the trial court's finding that "production on the 20th was not impracticable."[8] Despite Ms. Gibson's assertion that she was "really busy" when Mr. Taylor first appeared on January 20, 2016, she assured him that he could access the records upon his later return. Ms. Gibson's initial communications to Mr. Taylor thus belied any suggestion that it would be impracticable to assist him later that afternoon. She represented, without any equivocation, that Mr. Taylor could view the records if he returned in about an hour. When Mr. Taylor did return, Ms. Gibson simply refused to grant access to the records. Upon being reminded of her prior assurances that Mr. Taylor could view the records if he returned that day, Ms. Gibson did not provide any meaningful explanation for her position in denying access to the records, other than to inform Mr. Taylor's counsel that she had attempted to contact her attorney and that she was presently refusing Mr. Taylor inspection rights. We find no reason to disturb the trial court's determination that "the Town should have made . . . records available for [Mr. Taylor's] inspection on the 20th when he asked to view them."

---

[8] In support of its finding that production was not impracticable on January 20, the trial court noted that Ms. Gibson's January 8 letter had indicated that the records would be available for inspection on January 13. The trial court reasoned that "it is not unreasonable for the Petitioner to arrive 7 days later and expect the documents to be readily available for inspection."

**Willfulness and the issue of costs and attorney's fees under the TPRA**

Having determined that the Town denied Mr. Taylor's second and third public records requests under the TPRA, we now address Mr. Taylor's contention that the trial court's refusal to award him costs and attorney's fees was in error. Under the TPRA, a trial court may award costs and attorney's fees if it finds "that the governmental entity, or agent thereof, refusing to disclose a record, knew that such record was public and *willfully* refused to disclose it." Tenn. Code Ann. § 10-7-505(g) (emphasis added). As is evident from the statute, a determination of willfulness is a condition precedent to an award of attorney's fees and other costs. Here, upon concluding that this condition precedent was not established, the trial court denied Mr. Taylor's request for attorney's fees. Whereas the Town maintains that the trial court's determination regarding willfulness should be affirmed, Mr. Taylor asserts that the trial court erred when it concluded that the Town's denial of access was not willful.

*Willfulness*

We recently examined the standard for willfulness under the TPRA in *Friedmann v. Marshall County*, 471 S.W.3d 427 (Tenn. Ct. App. 2015). In *Friedmann*, we observed that the willfulness standard had been subject to varying judicial statements. *Id.* at 436. Specifically, we noted that whereas some courts had considered willfulness to require a heightened showing of "ill will" or "dishonest purposes," other courts had measured willfulness in terms of the validity of the legal position a governmental entity relies on to support a denial of access. *Id.* at 436-38. In reaching the conclusion that "'willfulness' is not to be measured in terms of 'moral obliquity' or 'dishonest purposes,' but . . . in terms of the relative worth of the legal justification cited by a municipality to refuse access to records," *id.* at 439, we quoted favorably from our prior opinion in *The Tennessean v. City of Lebanon*, No. M2002-02078-COA-R3-CV, 2004 WL 290705 (Tenn. Ct. App. Feb. 13, 2004). In that case, this Court observed as follows:

> This court has, in some cases, defined the willful and knowing standard as synonymous with bad faith. *Arnold*, 19 S.W.3d at 789;[9] *Contemporary Media*, 1999 WL 2922[]64, at *4-5;[10] *Capital Case Resource Center of Tennessee, Inc. v. Woodall*, No. 01-A01-9104-CH-00150, 1992 WL 12217 (Tenn. Ct. App. Jan. 29, 1992) (no Tenn. R. App. P. 11 application filed). Despite the language used, however, the courts in each of these cases

---

[9] *Arnold v. City of Chattanooga*, 19 S.W.3d 779, 789 (Tenn. Ct. App. 1999).

[10] *Contemporary Media, Inc. v. City of Memphis*, No. 02A01-9807-CH00211, 1999 WL 292264, at *4-5 (Tenn. Ct. App. May 11, 1999).

- 10 -

actually applied an analysis based on the state of existing law. The *Arnold* and *Contemporary Media* courts also adopted the Black's Law Dictionary definition of bad faith, which includes an element of fraud, sinister motive, dishonest purpose, ill will, or similar intent. *Arnold*, 19 S.W.3d at 789. We do not believe that inserting this element into the statutory standard is consistent with the [TPRA] or the purpose of the attorney fee provision. The equation of the knowing and willful statutory standard with bad faith was first made in the *Capital Case Resource Center* opinion, but that court did not adopt the definition used in the later opinions. In fact, the court analyzed the existence of bad faith by applying the Tenn. R. Civ. P. 11 standard of whether the argument for the refusal of access was warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. 1992 WL 12217, at *9. Thus, the *Capital Case Resource Center* court defined bad faith as the absence of Rule 11 good faith in the context of the legal arguments made. In *Combined Communications*, 1994 WL 123831 at *[3],[11] this court held that the [TPRA's] attorneys fee provision did not apply where a governmental entity's unsuccessful attempt to protect a public record from disclosure meets the Rule 11 standard. No reference was made to bad faith.

*Id.* at *9 n.9.

Although one panel of this Court suggested that the Tennessee Supreme Court adopted a "bad faith" analysis in 2007, *see Custis v. Metro. Nashville Police Dep't*, No. M2011-02169-COA-R3-CV, 2012 WL 4847091, at *4 (Tenn. Ct. App. Oct. 10, 2012), we rejected this understanding in *Friedmann*. We noted that the Supreme Court's 2007 opinion in *Schneider v. City of Jackson*, 226 S.W.3d 332 (Tenn. 2007), merely observed that the TPRA's element of "'willfully' . . . **has been described** as synonymous to a bad faith requirement.'" *Friedmann*, 471 S.W.3d at 438 (quoting *Schneider*, 226 S.W.3d at 346). We further noted that the "*Schneider* court did not affirmatively state that it was adopting a 'bad faith' standard," and we opined that the Supreme Court's analysis in *Schneider* "did not suggest that a heightened showing of willfulness is required in cases where records custodians deny access to records." *Id.* Indeed, after summarizing the facts from *Schneider*, we observed that "notwithstanding its conclusion that the [petitioners] were entitled to recover attorneys' fees, the *Schneider* court's opinion contained no discussion concerning whether the city in that case had any dishonest motivations that prompted its refusal to provide access to [the requested records]." *Id.* at 439 n.14. Whereas such dishonesty, moral obliquity, or ill will would be required under

---

[11] *Combined Commc'ns, Inc. v. Solid Waste Region Bd.*, No. 01-A-01-9310-CH00441, 1994 WL 123831, at *3 (Tenn. Ct. App. Apr. 13, 1994).

a heightened, "bad faith" standard for willfulness, we observed that the analysis in *Schneider* focused "squarely on the validity of the position that the [government] used to support its refusal of access to the requested records." *Id.*

We reiterated our understanding of the standard for willfulness in *Clarke v. City of Memphis*, 473 S.W.3d 285 (Tenn. Ct. App. 2015), and cited to *Friedmann*, *The Tennessean*, and *Schneider* in an attempt to provide an appropriate framework for the analysis that is to be employed when determining whether a government's denial of records was willful. In summary, we noted that "[i]f a municipality denies access to records by invoking a legal position that is not supported by existing law or by a good faith argument for the modification of existing law, the circumstances of the case will likely warrant a finding of willfulness." *Id.* at 290.

In this case, as far as we can discern, the Town never disputed that Mr. Taylor was entitled to access the requested records. Rather, the dispute that manifested pertained to the manner by which Mr. Taylor could gain access to the requested records, and to the conditions that could attach thereto. Having considered the nature of the Town's responses to Mr. Taylor's second and third records requests, we conclude that the Town's effective denial of access was willful inasmuch as it erected several barriers to access that had no basis in law. Initially, we note that Ms. Gibson erroneously conditioned Mr. Taylor's right to inspect records on the payment of a $150.00 fee. This occurred not only in connection with Mr. Taylor's written records request, but also with respect to his oral records request on January 20, 2016. With specific reference to this latter request, we note that Ms. Gibson clearly communicated that any viewing of the records could only occur if Mr. Taylor paid the stated $150.00 fee. As we have already noted, "[a] records custodian may not . . . assess a charge to view a public record unless otherwise required by law[.]" Tenn. Code Ann. § 10-7-503(a)(7)(A). It was simply wrong to insist on the payment of an upfront fee to gain rights of access to inspect the requested public records.

Moreover, we are of the opinion that the Town's general denial of access on January 20 was without any demonstrated justification. Although Ms. Gibson stated that she was busy when Mr. Taylor first arrived to inspect the subject records, she assured him that he could view the records if he returned later that afternoon. The availability of the records for inspection was thus made apparent, and Mr. Taylor returned to view them as instructed. Of course, as we have already noted, Mr. Taylor was denied access upon his return. Ms. Gibson simply informed him that she had tried to contact her attorney and that he could not view the records until the following Friday. In our view, this explanation fails to contain any legitimate excuse for failing to provide access to the records on January 20. Records custodians are required to "promptly make available for inspection any public record not specifically exempt from disclosure." Tenn. Code Ann. § 10-7-503(a)(2)(B). There was no claim that the requested documents were exempt

from disclosure, and Ms. Gibson had already indicated that Mr. Taylor could view the records if he returned on the afternoon of January 20. The records were clearly available for inspection, and yet, Mr. Taylor did not gain the access that he was entitled to under the statute.

When questioned at the March 9, 2016 hearing as to why Mr. Taylor could not access the records upon his return, Ms. Gibson relied on the fact that she had not been able to speak with the Town's attorney:

Q. But at that point, you all had appointments scheduled . . . to come see the records, and there was no problem. So what was -- what was the issue?

A. I don't know. I hadn't heard back from Mr. Sands. And I was busy doing water bills and doing taxes.

Q. Between the time that Mr. Taylor came there the first time and the time he came there the second time, did you ever speak to the city attorney?

A. No.

Q. No?

A. He was in court.

Q. So what changed between his first time he came there and the second time he came there?

A. I wanted to make sure that I was doing things the proper way.

Q. Okay. But whenever he left out there the first time, he said you told him he was going to be able to view the records. When he comes back the second [time], you say he can't. What changed?

A. Because I could not get ahold of the city attorney.[12]

---

[12]Although governmental officials may certainly consult with their own counsel, it should also be noted that they are also free to consult with the Office of Open Records Counsel. In fact, the Office of Open Records Counsel was created "to answer questions and provide information to public officials . . . regarding public records." Tenn. Code Ann. § 8-4-601. It is statutorily directed to "answer questions and issue informal advisory opinions as expeditiously as possible to any person, including local government officials[.]" *Id.* It is even authorized to "informally mediate and assist with the resolution of issues concerning the open records law[.]" *Id.*

Respectfully, we fail to see why Ms. Gibson's failure to contact the Town's attorney has any bearing on Mr. Taylor's right of access. The records were available,[13] there was no dispute concerning their ability to be disclosed, and Mr. Taylor was present to inspect them. There being no good faith legal argument for the denial of access, we conclude that the Town's actions were willful and reverse the decision of the trial court on this issue.

In concluding that the Town's denial of records was not willful, the trial court appeared to place emphasis on the fact that Ms. Gibson followed certain advice from the Town's attorney. Moreover, the trial court noted that Mr. Taylor had not provided any assistance to Ms. Gibson in connection with her duties as a records custodian. With respect to this latter point, the trial court specifically stated that neither "Petitioner [n]or Petitioner's counsel . . . cite[d] Ms. Gibson to any specific information that her denial was in violation of the TPRA." Respectfully, we do not find the above-mentioned considerations to be relevant. First, we agree with Mr. Taylor that a citizen is not required to confront a records custodian and explain why a denial of records is in violation of the TPRA. A citizen may be motivated to do so when advocating for access to records, but such action is not required. Records custodians are obligated to "promptly make available . . . any public record not specifically exempt from disclosure." Tenn. Code Ann. § 10-7-503(a)(2)(B). Second, concerning Ms. Gibson's apparent reliance on

_____

[13] Although the trial court found that it was not impracticable to produce the requested documents, it also found "Ms. Gibson's testimony to be credible in that when Petitioner arrived on the 20th she was extremely busy handling other matters . . . and that she acted reasonably and in good faith in her assessment that it was not practicable to provide the documents for inspection on January 20th." We find no basis to disturb the trial court's specific finding that Ms. Gibson was a credible witness, but we note that there is a distinction between what Ms. Gibson thought was impracticable, and what was, in actuality, not. The trial court clearly drew such a distinction given its finding that the production of documents was not impracticable. That distinction aside, the trial court's specific comments in connection with its credibility determination deserve further attention. The implication from these comments is that Ms. Gibson testified that she believed that it was not practicable to provide the documents on January 20. We do not believe that is a precisely accurate characterization of her testimony. There is no question that Ms. Gibson claimed to be busy when Mr. Taylor first appeared on January 20. However, regarding Mr. Taylor's return to view the records later that afternoon (as Ms. Gibson had instructed he could), Ms. Gibson's refusal to provide access appears to have been predicated on her inability to contact the Town's attorney. There is a casual reference in her testimony that she was also busy in the afternoon, but the clear takeaway, as we read her testimony, is that Mr. Taylor was denied access because she had not been able to reach the Town's attorney. Indeed, as we have noted earlier, when asked what had changed when Mr. Taylor returned to view the records pursuant to her previous assurances, Ms. Gibson simply responded, "Because I could not get ahold of the city attorney." We note that Ms. Gibson's testimony on this issue largely tracks what transpired according to the video recording of the second January 20 encounter. As we have previously detailed, the video recording shows Ms. Gibson explain that (a) she has not been able to get in contact with the Town's attorney and (b) Mr. Taylor will not be able to view the records until the following Friday.

- 14 -

advice of counsel, what we find important is the relative worth of the advice of that counsel, not the mere fact that legal counsel was sought. Indeed, as we have stated, willfulness is to be measured in terms of whether a denial of access is supported by existing law or a good faith argument for the modification of existing law. *See Clarke*, 473 S.W.3d at 290. As we noted in *The Tennessean*, the willfulness analysis "evaluates the validity of the refusing entity's legal position supporting its refusal; critical to that determination is an evaluation of the clarity, or lack thereof, of the law on the issue involved." *The Tennessean*, 2004 WL 290705, at *9. In our opinion, it matters not that a records custodian sought out legal advice if the legal position adopted by the records custodian is without any basis in the law or a good faith argument for a modification of the law. After all, governmental entities are themselves charged with fostering access to public records under the TPRA. When a governmental entity is confronted with a public records request, it assumes ultimate responsibility for a faithful and legal administration of the TPRA. Indeed, a governmental entity "cannot remain unknowledgeable of the [TPRA] and authority interpreting it and thereby immunize itself from liability for attorneys fees. A request for access to a public record imposes a duty on the entity to inform itself of its legal obligations." *Id.* at *9 n.8. Although deference to counsel may certainly be advisable, we are of the opinion that such deference does not countenance against a finding of willfulness in situations where there is no good faith legal argument for the denial of access.[14]

### Costs and Attorney's Fees

The trial court denied attorney's fees to Mr. Taylor upon determining that the Town's actions were not willful. Although we agree with Mr. Taylor that the trial court's willfulness assessment was in error, we note that a finding of willfulness does not automatically trigger an award of attorney's fees and other costs. The General Assembly has provided that attorney's fees *may* be awarded once a finding of willfulness has been established. *See* Tenn. Code Ann. § 10-7-505(g) ("If the court finds that the governmental entity, or agent thereof, refusing to disclose a record, knew that such record was public and willfully refused to disclose it, such court may, in its discretion, assess all reasonable costs involved in obtaining the record, including reasonable attorneys' fees, against the nondisclosing governmental entity."). Here, the trial court simply denied attorney's fees to Mr. Taylor upon determining that the Town's actions were not willful.

---

[14] In his brief, Mr. Taylor paints with a somewhat broad brush when he states as follows: "The relevant question . . . is not 'Who told who?' but rather 'Were they correct?'" Although we certainly agree with the general sentiment expressed, a governmental entity should not be determined to have acted willfully if a good faith legal argument existed for the denial of access. Thus, the ultimate question is not whether the governmental entity was correct, but whether the denial of access was supported by existing law *or* a good faith argument for the modification of existing law. "[C]ritical to that determination is an evaluation of the clarity, or lack thereof, of the law on the issue involved." *The Tennessean*, 2004 WL 290705, at *9.

Given our conclusion that this willfulness determination was in error, we hereby remand the case to the trial court to reconsider its decision not to award costs and attorney's fees in light of our determination that the Town acted willfully.

With regard to Mr. Taylor's request to recover costs and attorney's fees incurred on appeal, we exercise our discretion to grant his request. Mr. Taylor had to file a lawsuit to obtain access to the requested public records, and this appeal was part and parcel of his efforts to vindicate his right of access. Indeed, absent the willful denial of access, Mr. Taylor would not have incurred any attorney's fees, appellate or otherwise. Thus, in our view, his appellate costs and attorney's fees are "costs involved in obtaining the record." Tenn. Code Ann. § 10-7-505(g). Concerning this point, we find it to be of no moment that Mr. Taylor had already obtained access to the requested records by the time of this appeal.[15] In *The Tennessean*, a newspaper reporter was denied a request to obtain copies of certain public records. *The Tennessean*, 2004 WL 290705, at *1. Litigation soon ensued over the matter, including the filing of a petition for access in the Wilson County Chancery Court. *Id.* at *2. Ultimately, the requested records were tendered before a show cause hearing was held, and the show cause hearing was converted into a hearing on the petitioner's request for attorney's fees. *Id.* The trial court ordered that the petitioner be awarded certain attorney's fees in connection with the TPRA dispute, including "costs . . . incurred in applying for attorney fees." *Id.* at *3. Although the trial court's order was modified on appeal, our opinion in that case reflects that the trial court's order was modified to "include [particular] fees that had been *excluded* by the trial court." *Id.* at *1 (emphasis added). By implication, therefore, we held that it was appropriate to award costs incurred in litigating attorney's fees under the TPRA. After all, the trial court had expressly ordered that the petitioner be reimbursed the costs incurred in applying for fees. *Id.* at *3.

In light of the above, our remand of this case is for two purposes. First, the trial court shall reconsider its decision not to award costs and attorney's fees incurred in the trial court prior to the filing of this appeal in light of our determination that the Town's denial of access was willful. Second, the trial court shall award Mr. Taylor his reasonable costs and attorney's fees incurred in this appeal.

## CONCLUSION

For the reasons stated herein, we conclude that the Town's denial of access to the requested public records was willful. In light of our determination on this issue, the trial

---

[15] As previously noted, the transcript of proceedings reflects that the Town brought copies of the requested records to the March 9, 2016 hearing. At that time, the Town's trial counsel indicated that the Town would give those copies to Mr. Taylor "with no expense[.]"

court shall reconsider on remand its decision not to award Mr. Taylor costs and attorney's fees incurred in the trial court prior to the filing of this appeal. The trial court shall also determine on remand an amount to be awarded for the costs and attorney's fees Mr. Taylor incurred in this appeal. Appellate court costs are assessed against the Appellee, the Town of Lynnville, for which execution may issue if necessary. This case is remanded to the trial court for the collection of costs, enforcement of the judgment, and for such further proceedings as may be necessary and are consistent with this Opinion.

_____
ARNOLD B. GOLDIN, JUDGE