IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 31, 2023 Session

**MARVIN L. MILLER v. CITY OF LAFOLLETTE ET AL.**

**Appeal from the Chancery Court for Campbell County**
**No. 2022-CV-0159  Elizabeth C. Asbury, Chancellor**

_____

**No. E2023-00197-COA-R3-CV**

_____

The genesis of this case lies in the investigation into a city's police department and subsequent termination of the appellant, a former police department employee. After the appellant was terminated, his counsel sent a public records request to the city, one of the appellees herein, pursuant to the Tennessee Public Records Act. Through this public records request, the city was asked for copies of, among other things, "investigative material" related to the appellant. Although some records were initially produced in response to the public records request, other records were not provided until after litigation was initiated by the appellant in chancery court. Certain "investigatory" records that had formerly been in the possession of an attorney hired by the city to investigate the police department were not ever produced. Although the parties dispute whether such "investigatory" records would be subject to disclosure under the Tennessee Public Records Act, such records had, according to the findings of the chancery court, been destroyed by the time the city received the public records request at issue herein. Upon the conclusion of the trial litigation, the chancery court also found that "all requested documents that exist had been provided" and determined that the city "did not willfully refuse to disclose documents and records." In light of its determination that the city did not act willfully, the chancery court held that attorney's fees would not be awarded in this case. For the reasons stated herein, the chancery court's judgment is affirmed in part and vacated in part, and the case is remanded for further proceedings consistent with this Opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Vacated in Part, and Remanded.**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY ARMSTRONG, J., joined.

Lyndol Scott Miller, LaFollette, Tennessee, for the appellant, Marvin L. Miller.

Courtney Epps Read, Knoxville, Tennessee, for the appellees, Stan Foust and City of LaFollette.

## OPINION

## BACKGROUND AND PROCEDURAL HISTORY

In June 2022, Detective Charles Duff ("Detective Duff") submitted a grievance letter to several officials with the City of LaFollette ("the City") concerning alleged issues within the City's police department. The City subsequently hired attorney Celeste Herbert ("Attorney Herbert") to conduct an investigation of the police department, and in a letter report dated August 2, 2022, Attorney Herbert found that the conduct of Marvin Miller ("Mr. Miller"), then a police department employee, had violated certain provisions of the City's personnel policy. Attorney Herbert's letter report reflected that she had "conducted numerous in-person interviews, telephone interviews and Zoom interviews" as part of her investigation. The same day that Attorney Herbert's letter report was issued, the LaFollette City Council voted to terminate Mr. Miller from his employment with the police department.

In an August 3, 2022, email addressed to Stan Foust ("Mr. Foust"), the City Administrator and designated Public Records Request Coordinator, Attorney Herbert wrote that her "usual practice is to shred investigation materials at the conclusion of an investigation." In connection with this statement, Attorney Herbert requested that Mr. Foust "advise if this is acceptable." Of note, at the time of Attorney Herbert's August 3, 2022, email, Mr. Miller had not made the public records request that is at issue herein. In response to Attorney Herbert's email, Mr. Foust stated that shredding "would be fine" except for the matter of a "tracking log."

Counsel representing Mr. Miller thereafter sent both a preservation letter and a public records request to the City, which, according to the trial court's findings in this case, were not received by the City until August 8, 2022. The preservation letter expressed concern about securing "all potentially relevant evidence that may be essential to the appeal or civil process" pertaining to Mr. Miller's "alleged termination of . . . employment," and through the public records request sent to the City pursuant to the Tennessee Public Records Act ("the TPRA" or "the Act"), Mr. Miller sought to obtain, among other things, "[a]ny investigative material related to Marvin L. Miller in the last 6 months." Whereas Mr. Foust subsequently produced certain documents pursuant to the public records request, namely, Attorney Herbert's letter report, Detective Duff's grievance, the City Council meeting minutes from when Mr. Miller was terminated, the City's Employee Personnel Policy Handbook, and the City's Police Officer's Manual, a dispute regarding Mr. Miller's public records request would soon materialize.

Prior to the onset of the present litigation, in a letter dated August 11, 2022, counsel

for Mr. Miller wrote Mr. Foust thanking him for his production of records but also asserting that investigative material such as "notes, audio recordings, statements, etc. that were conducted by the City . . . and/or an agent of the City" had not been provided. In an ensuing petition filed in the Campbell County Chancery Court ("the trial court") seeking judicial review of the City's alleged denial of access to public records, Mr. Miller averred that this letter to Mr. Foust had not been responded to, and he specifically sought access to "Records from The Investigation," asserting that they were public records "because they were received by the investigator as an agent of the LaFollette City Council." Within the petition, which invoked the authority of the TPRA and named Mr. Foust and the City as Respondents, Mr. Miller asserted that he had been denied access to other records as well. As part of his concluding prayer for relief, Mr. Miller requested that he be granted an award of costs and attorney's fees under the TPRA.

In a subsequently filed answer, the City and Mr. Foust submitted that Mr. Miller's "prayers for relief are without merit and should be denied in full." Attached to the answer was a letter authored by City Attorney Reid Troutman. That letter, which was dated August 30, 2022, referenced the aforementioned August 11 letter from Mr. Miller's counsel and stated in pertinent part as follows:

> It is the City's position that all of the documentation previously requested has been delivered to you. . . . We were not provided with, nor do we possess, the investigative materials, notes or documents. In fact, we have no knowledge that any such documentation and/or information exists. . . .
>
> Even if said documents did exist, the City would object to the production of said information upon the grounds that said information is attorney work product and is considered confidential under rule 26.02(3).

The public records dispute was eventually heard by the trial court over the course of several dates. During the first hearing, Mr. Foust was asked if there was anything in his search that had been responsive to Mr. Miller's records request that was not turned over. Mr. Foust responded, at that time, as follows: "No, no. If I would have had them, I have no problem of giving anything I've got. I mean I don't know why anybody would think that you would hide anything from them." When asked if he would provide further records if Mr. Miller's counsel "wants to add anything to this request," Mr. Foust replied, "If it's in my possession, I have no problem giving him anything." When asked about certain records and whether he had understood the records request as seeking their production, Mr. Foust responded in the negative but expressed his willingness to hand such documents over. One such document, a contract between the City and Attorney Herbert, was handed to Mr. Miller's counsel during the hearing. Regarding another document, the trial court inquired of Mr. Miller's counsel if it was something that he was asking for, to which Mr. Miller's counsel signaled his agreement. The record reflects that Mr. Foust agreed to provide that document.

Although Mr. Foust showed a willingness to accommodate Mr. Miller, the trial court also found in this case that "it was clear that Respondents needed to make a more thorough and diligent search for records related to [Mr. Miller's] request." Subsequent to the first hearing, the City produced additional records after an additional search was conducted, and although it appears that most of these records were not actually responsive to the public records request as drafted, *some* of the belatedly produced documents were in fact responsive per the City's own admission. During the second hearing, Mr. Foust even referenced one record as something that "should have been initially" produced, and during the third and final hearing, another City official noted that he previously "didn't search . . . thoroughly." Although counsel for the City pointed to the fact that the number of responsive documents to the initial request was "actually very few,"[1] it was acknowledged that the City had not done a system-wide search of emails initially and that there had been some records that, although requested, had not been produced until after the onset of this litigation.

In an ensuing order entered after the proof in this case concluded, the trial court stated that most of the additional information that the City had provided after the onset of litigation was "not particularly relevant." The trial court further noted that materials that Attorney Herbert had possessed were not available to be turned over because they had been destroyed. In fact, the trial court found that "all recordings and documentation relied upon by [Attorney] Herbert in her investigation had been destroyed at the time of receipt of the record requests," and the court noted that "the City never received any recordings or documentation from the investigator."[2] Upon expressly finding that "all requested documents that exist had been provided," the court went on to conduct an assessment of the City's willfulness, or lack thereof, in relation to the public records request at issue. As evidenced by the included discussion on this matter and the trial court's own words, the "main concern" of the court was in relation to the subject of Attorney Herbert's records. Ultimately, at the end of the included discussion on the matter, the trial court concluded that "the City did not willfully refuse to disclose documents and records." The present appeal followed.

## LEGAL BACKGROUND GOVERNING PUBLIC RECORDS DISPUTES AND STANDARD OF REVIEW

As we reiterated in a recent opinion, "[t]he public's right to examine governmental records has been recognized by Tennessee courts for more than a century." *Conley v. Knox Cnty. Sheriff*, No. E2020-01713-COA-R3-CV, 2022 WL 289275, at *3 (Tenn. Ct. App. Feb. 1, 2022). Further,

---

[1] Counsel for Mr. Miller did not disagree with the City's counsel's position that most of the documents handed over during the course of litigation were "not related to anything we asked for," but he also argued that "there was plenty of stuff in there that was related to what we had asked for."

[2] Attorney Herbert's August 2, 2022, letter report, of course, had already been turned over by Mr. Foust in response to the initial records request.

[t]his right was codified in 1957 when the Tennessee Legislature enacted the TPRA. *Taylor* [ *v. Town of Lynnville*, No. M2016-01393-COA-R3-CV, 2017 WL 2984194, at *2 (Tenn. Ct. App. July 13, 2017)]; *see also Schneider v. City of Jackson*, 226 S.W.3d 332, 339 (Tenn. 2007). The TPRA broadly defines "public records" to include

> all documents, papers, letters, maps, books, photographs, microfilms, electronic data processing files and output, films, sound recordings, or other material, regardless of physical form or characteristics, made or received pursuant to law or ordinance or in connection with the transaction of official business by any governmental entity.

Tenn. Code Ann. § 10-7-503(a)(1)(A)(i). "Given this definition, the [TPRA] has been described as an 'all[-]encompassing legislative attempt to cover all printed matter created or received by government in its official capacity.'" *Schneider*, 226 S.W.3d at 339-40 (quoting *Griffin v. City of Knoxville*, 821 S.W.2d 921, 923 (Tenn. 1991)).

> As this Court has explained,
>
> [t]here is a "presumption of openness" under the TPRA and a "clear legislative mandate favoring disclosure of governmental records." *Schneider*, 226 S.W.3d at 340 (citations omitted). Indeed, the statute requires that "[a]ll state, county and municipal records shall, at all times during business hours . . . be open for personal inspection by any citizen of this state." Tenn. Code Ann. § 10-7-503(a)(2)(A). Moreover, unless the requested public record is specifically exempt from disclosure, the records custodian must promptly make it available for inspection. Tenn. Code Ann. § 10-7-503(a)(2)(B).

*Taylor*, 2017 WL 2984194, at *2. The public policy behind the "presumption of openness" is plainly that "access to governmental records promotes public awareness and knowledge of governmental actions and encourages governmental officials and agencies to remain accountable to the citizens of Tennessee." *Schneider*, 226 S.W.3d at 339 (citing *Memphis Publ'g Co. v. Cherokee Children & Family Servs., Inc.*, 87 S.W.3d 67, 74-75 (Tenn. 2002)).

"If a person is denied access to public records, the Act itself provides the remedy," *Hickman v. Tennessee Bd. of Prob. & Parole*, No. M2001-02346-COA-R3-CV, 2003 WL 724474, at *4 (Tenn. Ct. App. Mar. 4, 2003), to-wit:

(a) Any citizen of Tennessee who shall request the right of personal inspection of any state, county or municipal record as provided in § 10-7-503, and whose request has been in whole or in part denied by the official and/or designee of the official or through any act or regulation of any official or designee of any official, shall be entitled to petition for access to any such record and to obtain judicial review of the actions taken to deny the access.

Tenn. Code Ann. § 10-7-505(a). The TPRA also allows for the recovery of reasonable attorney's fees and costs incurred in obtaining any public record that a governmental entity "willfully refused to disclose. . . ." Tenn. Code Ann. § 10-7-505(g).

*Id.* at *3-4.

As for our standard of review, we review the trial court's factual findings "de novo upon the record, accompanied by a presumption of correctness unless the preponderance of the evidence is otherwise." *Taylor*, 2017 WL 2984194, at *2. Regarding questions of law, our review is de novo with no presumption of correctness. *Id.* We review discretionary decisions, such as those involving attorney's fees issues, for an abuse of discretion. *See Jetmore v. City of Memphis*, No. W2018-01567-COA-R3-CV, 2019 WL 4724839, at *8 (Tenn. Ct. App. Sept. 26, 2019).

## DISCUSSION

In his brief on appeal, Mr. Miller raises multiple issues for review, all of which ultimately bear on the following two essential questions to be decided in this case: (1) whether the City willfully denied access to the "investigatory" records of Attorney Herbert and (2) whether the City willfully denied access to other records. Resolution of these questions themselves have a bearing on Mr. Miller's contention that the trial court erred in not awarding him any attorney's fees in connection with his lawsuit. For the specific reasons discussed below, although we discern no error in connection with the trial court's failure to award Mr. Miller attorney's fees in relation to the "investigatory" records of Attorney Herbert, we conclude that this case should be remanded for further proceedings regarding the question of the City's willfulness, or lack thereof, in relation to other records at issue in this case.

We turn first to the matter of the "investigatory" records of Attorney Herbert. Much of the discussion on appeal has surrounded the question of whether such records qualified as public records so as to be potentially subject to disclosure. Although Mr. Miller, of course, has submitted that Attorney Herbert's materials were "effectively City records," the City has maintained that they were not. The City has further maintained that Attorney Herbert's materials would, in any event, qualify as "work product" and therefore be exempt

- 6 -

from disclosure. As to this latter proposition from the City, there is no question that the law protects work product from disclosure. *See The Tennessean v. Tenn. Dep't of Pers.*, No. M2005-02578-COA-R3-CV, 2007 WL 1241337, at \*10 (Tenn. Ct. App. Apr. 27, 2007) ("[I]t is clear that the . . . work product doctrine provide[s] [an] exception[] to the disclosure requirements of the Act.").

As compelling as it could be to explore the questions posed through the above arguments, it does not appear to be necessary under the particular facts presented by this case to assess whether Attorney Herbert's records were actually subject to disclosure under the Act. As it is, under the findings of the trial court, those records were not in existence at the time that the City received Mr. Miller's records request.[3] Very simply, Mr. Miller was not actually denied the "investigatory" records because there was nothing to disclose.[4] Relatedly, although Mr. Miller's grievance on appeal concerning these "investigatory" records is clearly lodged in pursuit of an award of attorney's fees, we observe that an award of attorney's fees is available in connection with a trial court's discretionary decision to "assess all reasonable costs involved in *obtaining the record*." Tenn. Code Ann. § 10-7-505(g) (emphasis added). Because there was nothing to disclose with respect to the particular universe of records under present examination, there was nothing for Mr. Miller to obtain.

Importantly, our holding on this matter is limited by the particular facts presented by this case, and our holding is further limited to addressing only what is necessary to resolve Mr. Miller's present requests for relief. Accordingly, we express no ultimate opinion as to the propriety of the destruction of the "investigatory" records that occurred before Mr. Miller's public records request was received, nor do we express an opinion as to whether other consequences might stem, or could have stemmed, from those records' present unavailability.[5] We merely hold that, inasmuch as Mr. Miller faults the City for failing to

---

[3] Mr. Miller attempts to cast some aspersions on this finding towards the conclusion of his brief, albeit in specific connection with his argument that the trial court conducted an erroneous evaluation of the willfulness inquiry under an "alternative" standard, and in the course of doing so, he specifically remarks that the "evidence did not conclusively support" the trial court's determination as to the timing of Attorney Herbert's file destruction. Through his comments about lack of "conclusive" support, it is clear that Mr. Miller has not actually mounted a proper challenge asserting that the evidence *preponderates* against the trial court's factual finding, and he has thus waived any potential issue concerning the matter. In any event, we observe that although Attorney Herbert could not recall the exact date of her file destruction during her testimony, her testimony signaled, in apparent reference to the date of her August 3 email correspondence with Mr. Foust, that she did *not* think the destruction would have occurred a week later. Her testimony further noted that "it could have been that day [of her August 3 email to Mr. Foust]" but also noted that it "could have been the following weekend." We take judicial notice that the weekend after the August 3 email correspondence was before the August 8 date on which the City was found to have received the public records request.

[4] Of course, what was in existence and what the City had received from Attorney Herbert, her August 2, 2022, letter report, was disclosed to Mr. Miller.

[5] Although, for the reasons stated above, we need not express any opinion on the matter for purposes of this appeal given that the ultimate relief sought by Mr. Miller is an award of attorney's fees, we note that

- 7 -

disclose Attorney Herbert's records in connection with his public records request and seeks attorney's fees in relation thereto, his concerns on appeal are respectfully without merit. Indeed, assuming arguendo that Attorney Herbert's records would have otherwise been subject to disclosure under the Act had they been in existence, the trial court's findings signal that there was nothing that could be disclosed. Mr. Miller could not obtain the desired records then, nor could he or any other citizen obtain them now pursuant to a public records request.

Although we thus discern no error in the fact that the trial court did not award Mr. Miller any attorney's fees in relation to the "investigatory" records of Attorney Herbert, other records were at issue in this case, including some records such as emails that were not produced until after the commencement of litigation but which, even according to the City, were responsive to the initial public records request. The remaining question thus becomes whether there was any basis to award Mr. Miller attorney's fees concerning any of these other records. As touched on above, the TPRA provides a vehicle to recover attorney's fees through the authority in Tennessee Code Annotated section 10-7-505(g). In full, that statutory provision states as follows:

> (g) If the court finds that the governmental entity, or agent thereof, refusing to disclose a record, knew that such record was public and willfully refused to disclose it, such court may, in its discretion, assess all reasonable costs involved in obtaining the record, including reasonable attorneys' fees, against the nondisclosing governmental entity. In determining whether the action was willful, the court may consider any guidance provided to the records custodian by the office of open records counsel as created in title 8, chapter 4.

Tenn. Code Ann. § 10-7-505(g).

---

Tennessee Code Annotated section 10-7-503 contains a number of provisions related to the destruction of records and provides that "[a] governmental entity that authorizes the destruction of public records in violation of this part may be fined up to five hundred dollars . . . by a court of competent jurisdiction." Tenn. Code Ann. § 10-7-503(h)(3). Moreover, even though Tennessee Code Annotated section 10-7-503(h) outlines certain circumstances in which public records may be destroyed, it further clarifies that it "does not absolve a public official from criminal liability for intentionally or knowingly altering or destroying a public record in violation of § 39-16-504." Tenn. Code Ann. § 10-7-503(h)(5). We point to these provisions simply to illustrate that rendering records unavailable can create consequences for a governmental entity or public official. In making this point, of course, we do not actually definitively hold that the records at issue were public records that would have been subject to disclosure had they existed. In relation to this discussion, it should be additionally noted that counsel for Mr. Miller stated in the trial court that he was "not arguing that [Mr. Foust] committed a felony here under the . . . (h) portion of [the statute]."

We also note that the present appellate litigation merely concerns, ultimately, Mr. Miller's desire to obtain attorney's fees in relation to a public records request. Whether the destruction of records that occurred before his public records request was received might somehow warrant a spoliation sanction in other litigation that may be pending among the parties is not before us.

Here, insofar as we read it, the order of the trial court does not actually appear to consider whether the City's belated production of certain records responsive to the public records request during the pendency of this litigation amounted to an initial, willful nondisclosure of public records. Indeed, although there is a conclusory statement at the end of the order that "the City did not willfully refuse to disclose documents and records," this conclusion immediately follows the discussion included in the trial court's order as to Attorney Herbert's file, which, per the trial court, was its "main concern." Although the issue of Attorney Herbert's file has undoubtedly been a central point of contention in this case, this "main concern" of the trial court is of course not the exclusive concern in the litigation. Indeed, whether there was any willful nondisclosure of records pertaining to Attorney Herbert's file is a separate question from whether there was a willful nondisclosure with respect to certain records that were responsive to the public records request but only disclosed during the course of this litigation. Inasmuch as the order of the trial court does not appear to actually address that question in any direct or tangible way, we vacate the conclusion that "the City did not willfully refuse to disclose documents and records" but only to the extent that the conclusion might, divorced from the context appearing in the order itself, be considered to somehow broadly relate to records outside of Attorney Herbert's file. Again, the order does not appear to directly address the subject of willfulness outside of the issue of its "main concern" of Attorney Herbert's file,[6] and we are therefore of the opinion that the case should be remanded to the trial court for a specific consideration of the issue, which is consistent with the direction outlined in the Act. *See* Tenn. Code Ann. § 10-7-505(d) (providing that the trial court, in ruling upon the petition of a party, "shall render written findings of fact and conclusions of law"). If the trial court determines on remand that the City's failure to initially disclose certain responsive documents was willful, that would be a predicate upon which the trial court could, in its discretion, choose to award Mr. Miller attorney's fees pursuant to the Act. *See* Tenn. Code Ann. § 10-7-505(g) (providing that, upon a determination of willfulness, the court "may, in its discretion, assess all reasonable costs involved in obtaining the record, including reasonable attorneys' fees, against the nondisclosing governmental entity"); *see also Taylor*, 2017 WL 2984194, at *8 (noting that a finding of willfulness "does not automatically trigger an award of attorney's fees and other costs").

In cases under the Act, the burden of proof for providing a justification for not

---

[6] We are compelled to send this case back to the trial court because, as we read the order, the only clear assessment of willfulness addressed by the trial court was in reference to its stated "main concern," i.e., the file of Attorney Herbert. With that said, a couple of stray statements in the order are worthy of note. First, we observe that the order states in its findings of fact section that, at the conclusion of the hearing, "all requested documents that exist had been provided." Moreover, at one point, the order makes reference to the fact that the records custodian "provided a quantity of documents pursuant to the requests." The fact that many documents were provided in response to the request initially—and the fact that other responsive documents were provided by the conclusion of the trial litigation—is in no way dispositive of the question of whether the City acted willfully in failing to *initially* disclose certain records only later produced during litigation.

- 9 -

disclosing the records sought lies with the governmental entity, *see* Tenn. Code Ann. § 10-7-505(c) ("The burden of proof for justification of nondisclosure of records sought shall be upon the official and/or designee of the official of those records and the justification for the nondisclosure must be shown by a preponderance of the evidence."), and in regards to the willfulness assessment that should be broached by the trial court on remand vis-à-vis those actually responsive records that were not initially produced by the City in this case, we note that we have examined the TPRA willfulness standard in a number of relatively recent decisions, including *Clarke v. City of Memphis*, 473 S.W.3d 285 (Tenn. Ct. App. 2015). In *Clarke*, this Court observed in relevant part as follows regarding the articulation of the willfulness standard under our case law:

> We recently discussed the standard required for willfulness under the TPRA in *Friedmann v. Marshall County,* 471 S.W.3d 427 (Tenn. Ct. App. 2015). Although in *Friedmann* we acknowledged that varying judicial statements had been made on the topic, we stressed that willfulness should be measured "in terms of the relative worth of the legal justification cited by a municipality to refuse access to records." *Friedmann v. Marshall Cnty.,* 471 S.W.3d 427, 439 (Tenn. Ct. App.2015). In other words, the determination of willfulness "should focus on whether there is an absence of good faith with respect to the legal position a municipality relies on in support of its refusal of records." *Id.* at 438.
>
> In *The Tennessean v. City of Lebanon,* this Court explained that courts employ the following analysis in assessing willfulness:
>
>> Th[e] analysis emphasizes the component of the statutory standard that the entity or its officials know that the record sought is public and subject to disclosure. It evaluates the validity of the refusing entity's legal position supporting its refusal; critical to that determination is an evaluation of the clarity, or lack thereof, of the law on the issue involved.
>
> *The Tennessean v. City of Lebanon,* No. M2002–02078–COA–R3–CV, 2004 WL 290705, at *9 (Tenn. Ct. App. Feb. 13, 2004). If a municipality denies access to records by invoking a legal position that is not supported by existing law or by a good faith argument for the modification of existing law, the circumstances of the case will likely warrant a finding of willfulness.

*Clarke*, 473 S.W.3d at 290. Governmental entities are charged with fostering access to public records under the Act, and "[w]hen a governmental entity is confronted with a public records request, it assumes ultimate responsibility for a faithful and legal administration of the TPRA." *Taylor*, 2017 WL 2984194, at *8.

**CONCLUSION**

In light of the foregoing discussion, the trial court's judgment is affirmed in part and vacated in part. Although there is no error in the trial court's failure to award attorney's fees relative to records that were formerly in the possession of Attorney Herbert, further consideration by the trial court needs to be given to other records at issue in this litigation. Indeed, inasmuch as the willfulness assessment in the trial court's order only appears to be tied to the trial court's "main concern" of Attorney Herbert's records, we remand the case to the trial court for the trial court to address the question of the City's willfulness, or lack thereof, in relation to other records at issue in this case, specifically those records that, although responsive to the public records request made by Mr. Miller, were not produced until after the commencement of this litigation. If the trial court determines on remand that the City's failure to initially disclose certain responsive documents was willful, the court then should consider whether it will, in the exercise of its discretion pursuant to Tennessee Code Annotated section 10-7-505(g), award Mr. Miller his reasonable costs involved in obtaining those records.

_s/ Arnold B. Goldin_
ARNOLD B. GOLDIN, JUDGE